1  LANZONE MORGAN, LLP
   Jomo K. Stewart, SBN 197560
2  jks@lanzonemorgan.com
3  5001 Airport Plaza Drive, Suite 210
   Long Beach, California 90815
4  Telephone: 562-596-1700
   Facsimile: 562-596-0011
5

6  Attorneys for Plaintiffs, D.C., J.C., and T.C. by and through their Guardian, Melanie
7  Cabelka

8              UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA
10

11  D.C., J.C., and T.C. by and through their      ) Case No.: 18-cv-0013-WQH-KSC
12  GUARDIAN, MELANIE CABELKA           )
13                     Plaintiffs,                  )
14          vs.                                     )
                                                    ) **FIRST AMENDED COMPLAINT FOR**
15  COUNTY OF SAN DIEGO; COUNTY                     ) **DAMAGES AND DEMAND FOR JURY**
16  OF SAN DIEGO HEALTH AND                         ) **TRIAL**
    HUMAN SERVICES; CASEY FAMILY                    )
17  PROGRAMS; SARAH WILSON,                         )    1. **Violation of Federal Civil Rights (42**
18  Individually; CARLOS OMEDA,                     )       **U.S.C. § 1983)**
    Individually; FATIMAH ABDULLAH,                 )    2. ***Monell* Claims**
19  Individually; LAUREL BREDTHAUER,                )    3. **Failure to Comply with Mandatory**
20  Individually; MARILYN SPROAT; and               )       **Duties (Cal. Govt. Code § 815.6)**
    DOES 1 through 100;                             )    4. **Negligence**
21                     Defendants.                  )    5. **Negligent Infliction of Emotional**
22                                                  )       **Distress**
23

24  COMES NOW, Plaintiffs, who allege upon information and belief as follows:

25                  **JURISDICTION AND VENUE**

26  1. This Complaint arises under the Federal Civil Rights Act, 42 U.S.C. § 1983. This Court
27  has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331. This Court also
28  has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a).

                                         1

       FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

2. Venue is proper in this judicial district under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District. Venue is also proper under 28 U.S.C. § 1391(b)(1) because all parties are subject to personal jurisdiction in this District and therefore "reside" in this District as that term is defined in 28 U.S.C. § 1391(c).

## THE PARTIES

3. Plaintiffs, D.C., J.C., and T.C, are and at all times relevant herein, were minors in the care of Melanie Cabelka (hereinafter, collectively referred to as "PLAINTIFFS"). Melanie Cabelka is the PLAINTIFFS' legal guardian and brings this suit on behalf of PLAINTIFFS pursuant to Code of Civil Procedure § 17(a)(1)(C).

4. The COUNTY OF SAN DIEGO (hereinafter referred to as "the COUNTY") was at all relevant times and is, a local public entity, as that term is defined in Government Code section 900.4

5. The COUNTY OF SAN DIEGO HEALTH AND HUMAN SERVICES (hereinafter "SOCIAL SERVICES") was and is a local public entity and operating subdivision of the COUNTY.

6. CASEY FAMILY PROGRAMS (hereinafter "CASEY") was at all relevant times and is, a private corporation incorporated in the state of Washington. CASEY operates and maintains minimum contacts with the State of California out of its San Diego office located at 3878 Old Town Avenue, Suite 100, San Diego, California 92110.

7. At all relevant times, Defendant SARAH WILSON ("WILSON) was an individual who was an officer, agent, and employee of the COUNTY and of SOCIAL SERVICES. WILSON was a mandated reporter as the term is defined in California Penal Code section 11166.

8. At all relevant times, CARLOS OMEDA ("OMEDA"), was an individual who was an officer, agent, and employee of the COUNTY and of SOCIAL SERVICES. OMEDA was a mandated reporter as the term is defined in California Penal Code section 11166.

9. At all relevant times, FATIMAH ABDULLAH ("ABDULLAH"), was an individual who was an officer, agent, and employee of the COUNTY and of SOCIAL SERVICES.

2

ABDULLAH was a mandated reporter as the term is defined in California Penal Code section 11166.

10. At all relevant times, LAUREL BREDTHAUER ("BREDTHAUER"), was an individual who was an officer, agent, and employee of CASEY. BREADTHAUER was a mandated reporter as the term is defined in California Penal Code section 11166.

11. At all relevant times, MARILYN SPROAT ("SPROAT") was an individual who was an officer, agent, and employee of the COUNTY and of SOCIAL SERVICES. SPROAT was a mandated reporter as the term is defined in California Penal Code section 11166.

12. DOES 1 through 100 were officers, agents, and employees, or were otherwise able to act under the color of law on behalf of the COUNTY and its subdivisions, including but not limited to SOCIAL SERVICES. By so acting under color of law, DOES 1 through 100 engaged in wrongful conduct which caused injuries to the PLAINTIFFS as alleged *infra*.

13. PLAINTIFFS are ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 100, and for that reason has sued such Defendants by such fictitious names. PLAINTIFFS will seek leave of the Court to amend this Complaint to identify said Defendants once their identities are known.

14. PLAINTIFFS are informed and believe, and therefore alleges, that each Defendant designated as a DOE was responsible in any actionable manner for the events and happenings herein referred to, which proximately caused the injuries and damages to PLAINTIFFS as alleged herein.

## PLAINTIFFS SATISFIED ALL PROCEDURAL REQUIREMENTS TO BRING THIS CLAIM AGAINST DEFENDANTS

15. PLAINTIFFS provided the COUNTY notice of a claim on October 2, 2017. On November 20, 2017, the COUNTY denied PLAINTIFFS' claim. Thus, PLAINTIFFS have exhausted the government claim presentation process and the filing of this lawsuit is proper.

## STATEMENT OF FACTS

16. D.C. was born on August 18, 2004 and was just a mere 12 years old at the time the

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

incidents alleged herein occurred. J.C. was born on June 4, 2009 and was just a mere 6 years old at the time the incidents alleged herein occurred. T.C. was born on March 28, 2003 and was just a mere 13 years old at the time the incidents alleged herein occurred.

17.  Melanie Cabelka accepted D.G. into her home as a foster child in March of 2015. Before D.G. was welcomed into Melanie's home, he had been previously placed in several foster homes. Unbeknownst to Ms. Cabelka, at his previous foster care placement, D.G. had sexual relations with another boy within the home, and D.G. was ultimately removed from that placement.

18.  Prior to accepting D.G. into her home, Ms. Cabelka asked exhaustive questions pertaining to D.G.'s personal history and history within foster care system, including but not limited to: reasons for prior removals, any history of sexual misconduct, and any potential mental health issues. The COUNTY assured Ms. Cabelka the potential foster child had no history of sexual misconduct, mental illness, or any history of wrongdoing.

19.  On the assurances and representations of the COUNTY and SOCIAL SERVICES, Ms. Cabelka accepted and welcomed D.G. into her home with her three adopted young boys.

20.  Upon arrival to Ms. Cabelka's home, SOCIAL SERVICES and the COUNTY provided Ms. Cabelka with a folder of paperwork memorializing the absence of any previous mental health issues, and the absence of any sexual misconduct and/or deviant behaviors.

21.  Specifically, the paperwork completed by and provided by the COUNTY and SOCIAL SERVICES included A Statement of Dangerous Propensities. Within the form, it was indicated there were no known "sexual adjustment problems". It was also reported D.G. had no previous mental health issues, no incidents of violence towards others, and no instances of self-harm.

22.  In April of 2015, shortly after being accepted into the Cabelka's home, D.G. had smeared feces all over the bathroom wall at Ms. Cabelka's home. Ms. Cabelka researched fecal smearing and again inquired with SOCIAL SERVICES regarding prior instances of physical abuse, trauma, or sexual abuse upon learning such behavior was indicative of a history of physical and/or emotional disturbances. SOCIAL SERVICES again portrayed to Ms. Cabelka there were no previous incidents of this nature and he had no known psychiatric impairments.

4

1 Thereafter, Ms. Cabelka contacted the school to inform them of the incident and she was
2 advised D.G. had similar incidents occurring at the school. Ms. Cabelka was ensured a report
3 would be made and an investigation would ensue.

4 23.  On April 9, 2015 Ms. Cabelka contacted OLMEDA regarding concerns she received
5 from D.G.'s school that D.G. was having suicidal tendencies and anger problems. When she did
6 not hear back from OLMEDA, she contacted ABDULLAH advising her of same.

7 24.  Later in April of 2015, Ms. Cabelka met with OLMEDA and was provided paperwork that
8 indicated D.G. had previously received mental health counseling at school. When Ms. Cabelka
9 requested further information regarding the counseling, OLMEDA informed her it was routine
10 and standard for foster children to receive counseling at school. Ms. Cabelka indicated none of
11 her previous foster children had undergone such counseling but was again assured there were
12 no known behavioral or mental health issues.

13 25.  In October of 2015, Ms. Cabelka contacted SOCIAL SERVICES to express significant
14 concerns with D.G. smearing poop on the walls and the non-responsiveness of the social
15 workers she was requesting help from.

16 26.  On January 12, 2016, Ms. Cabelka contacted SOCIAL SERVICES to report concerns
17 regarding an incident in which D.G. was caught watching homosexual pornography. Ms.
18 Cabelka was ensured a report would be made and an investigation would ensue.

19 27.  On March 16, 2016, Ms. Cabelka contacted SOCIAL SERVICES advising them of an
20 incident wherein D.G. entered into Ms. Cabelka's bedroom, stole her iPad, and downloaded
21 homosexual child pornography. Ms. Cabelka was ensured a report would be made and an
22 investigation would ensue.

23 28.  On April 20, 2016, Ms. Cabelka contacted SOCIAL SERVICES yet again and expressed
24 concern with D.G.'s sexual tendencies after an incident where D.G. took one of the boys'
25 cellphones and again downloaded homosexual child pornography. Ms. Cabelka was ensured a
26 report would be made and an investigation would ensue.

27 29.  On April 23, 2016, Ms. Cabelka contacted SOCIAL SERVICES and expressed concerns

28

1    regarding an incident where she caught D.G. watching pornography on the boys' homework

2    computer. Ms. Cabelka was assured the incident would be reported.

3    30. On May 5, 2016, Ms. Cabelka contacted WILSON and advised her that she yet again

4    caught D.G. watching pornography.

5    31. In June 2016, Ms. Cabelka contacted SOCIAL SERVICES and WILSON requesting

6    assistance due to her continuing challenge to care for D.G. due to his sexual behaviors.

7    32. On or about July 18, 2016, Ms. Cabelka contacted SOCIAL SERVICES and WILSON

8    advising them of D.G. having a severe meltdown after Ms. Cabelka discovered D.G.

9    masturbating on the living room couch.

10    33. Despite DEFENDANTS having knowledge of D.G.'s propensity for sexual and physical

11    violence, and Ms. Cabelka's persistent pleas for removal, and the reporting of two previous

12    sexual assaults in the house; DEFENDANTS failed to take any action and on August 8, 2016,

13    D.G. raped D.C.

14    34. On August 8, 2016, while D.C. was sleeping peacefully in his bed, D.G. broke into the

15    boys' room, jumped on top of D.C., and proceeded to violently rape D.C. The rape was so

16    aggressive and violent that it caused the wheels of the bedframe to bend completely.

17    35. Ms. Cabelka immediately contacted SOCIAL SERVICES and WILSON and was assured

18    an investigation would be opened. Nobody in the family was interviewed about the

19    incident. Ms. Cabelka requested D.G. receive a higher level of care than she could

20    provide. DEFENDANTS remained non-responsive to Ms. Cabelka's inquiries.

21    36. D.C. is, was, and remains traumatized by the rape. He was unable to speak for a

22    number of hours after the incident. He now requires trauma therapy and experiences

23    anxiety attacks at school. He has had to attain an IEP and wears numerous layers of

24    clothing to prevent anyone from touching him.

25    37. By September 2016, after Ms. Cabelka's complaints and concerns had fallen on deaf

26    ears for over a year, Ms. Cabelka informed SOCIAL SERVICES she wanted to stop the

27    adoption process of D.G. SOCIAL SERVICES informed Ms. Cabelka that in doing so, she

28    would likely be unable to finalize the adoption of another one the foster children in which she

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

1  had created a significant bond with, and wanted to move forward with adopting. Ms. Cabelka

2  had no other option but to allow D.G. to remain in the home.

3  38.  On September 14, 2016, Ms. Cabelka contacted SOCIAL SERVICES and WILSON

4  begging for respite care for D.G.due to her concerns for the safety and wellbeing of her and her

5  other children.

6  39.  Despite DEFENDANTS having knowledge of D.G.'s propensity the for sexual and

7  physical violence, and Ms. Cabelka's persistent pleas for removal, and the reporting of at least

8  one previous sexual assault in the house; DEFENDANTS failed to take any action and on

9  October 20, 2016, D.G. sexually assaulted T.C.

10  40.  While T.C. was sleeping on October 20, 2016, D.G. began violently stroking

11  T.C.'s penis. T.C. was terrified throughout the entire event and pretended to be asleep, in

12  hopes that it would end. Later that day, D.G. bragged about what he had done. Ms.

13  Cabelka again immediately contacted the COUNTY, the SOCIAL SERVICES, WILSON

14  and BREDTHAUER. Ms. Cabelka was again ensured an investigation would be opened

15  and interventions would be explored. Ms. Cabelka requested D.G. be placed in a program

16  offering specialized services.

17  41.  On November 17, 2016, Ms. Cabelka again contacted WILSON and reiterated her desire to

18  halt the adoption process. Ms. Cabelka also advised WILSON D.G. had brought up sexual

19  relations with a boy in a previous foster home. Ms. Cabelka requested an investigation into the

20  incident and inquired as to why D.G. had been removed from the last home, to which she was

21  informed such information was confidential.

22  42.  On November 21, 2016, Ms. Cabelka reprimanded D.G. for inappropriately rubbing the

23  genitalia of the family dog. Moments later, she discovered him masturbating in the garage.

24  Both incidents were reported to WILSON.

25  43.  On November 22, 2016, Ms. Cabelka contacted SOCIAL SERVICES and WILSON

26  and expressed concerns about the safety of her and her children due to D.G.'s uncontrollable

27  masturbation habits. Ms. Cabelka requested placement in a specialized program called STEPS.

28  Ms. Cabelka was again promised a report would be made.

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

44. Later on November 22, 2016, Ms. Cabelka contacted SOCIAL SERVICES and WILSON to her inform her of an incident wherein she caught D.G. masturbating with the door wide open. WILSON indicated a report would be made.

45. On December 1, 2016, Ms. Cabelka contacted SOCIAL SERVICES, WILSON, and BRETHAUER with concerns relating to an incident in which D.G. was found fully exposed and masturbating in the living room.

46. On December 1, 2016, Ms. Cabelka again contacted SOCIAL SERVICES and WILSON and advised she felt she was incapable of controlling the situation and was concerned about the safety of herself and her children with D.G. in the household after she found D.G. watching pornography on a device he was instructed not to touch. WILSON assured Ms. Cabelka the situation would be reported and investigated.

47. WILSON was again contacted by Ms. Cabelka on January 2, 2017, after she discovered D.G. watching homosexual pornography.

48. On January 21, 2017, D.G. sexually assaulted J.C.

49. On January 21, 2017, J.C., at the tender age of seven, was watching cartoons in the family room around 5:00 p.m. Thereafter, D.G. entered the room, put a blanket over himself and J.C. and placed his hands aggressively on J.C.'s penis. For a number of minutes, D.G. violently masturbated J.C.'s penis as J.C. sat in fear and terror. Every time J.C. tried to escape, D.G. would grab J.C.'s penis harder. Eventually someone walked by the room and when D.G. looked away, J.C. ran to his bedroom where he remained in silence for the remainder of the night. The following day, J.C. woke up sobbing and begging his mother not to leave him. Ms. Cabelka asked the school to please keep an eye on him.

50. Ms. Cabelka was advised to look into a rash J.C. had recently required and noted one of the causes was an STD. Ms. Cabelka immediately retrieved J.C. from school and asked if D.G. had touched him inappropriately. J.C. sobbed while telling his mother what happened. Ms. Cabelka checked J.C. and noticed significant abrasions and injuries all over J.C.'s penis.

51. J.C. is emotionally and physically scarred from the incident. J.C. lives in

1 constant fear and is terrified to sleep in his own room. J.C. requires the assistance of a therapist
2 to cope with his post-traumatic stress disorder.
3 52.  In grave fear of her safety and her children's Ms. Cabelka immediately drove D.G. to the
4 STEPS program that she had been requesting the COUNTY place D.G. in for months and
5 refused him reentry to her house.
6 53. The San Diego District Attorney filed felony delinquency charges against D.G. for the
7 sexual abuse of the PLAINTIFFS.

8 ## FIRST CAUSE OF ACTION
9 ## VIOLATION OF FEDERAL CIVIL RIGHTS
10 ## (Pursuant to United States Code, Title 42, § 1983)
11 **[By D.C., J.C., and T.C., by and through their Guardian, Melanie Cabelka against ALL**
12 **DEFENDANTS]**

13 54. PLAINTIFFS incorporate all previous paragraphs of this Complaint as though fully
14 set forth at length herein.
15 55.  At all relevant times herein, The COUNTY, SOCIAL SERVICES, WILSON,
16 OMEDA, ABDULLAH, and SPROAT Defendants, were responsible for the evaluation,
17 placement, supervision, and well-being of foster children within their care. Moreover,
18 they were responsible for determining suitability, eligibility, and appropriateness of a
19 placement within a foster home. Because COUNTY, SOCIAL SERVICES, WILSON,
20 OMEDA, ABDULLAH, and SPROAT were the only individuals with access and a duty
21 to investigate a foster child's background and eligibility for placement, the
22 aforementioned DEFENDANTS owed a duty to accurately depict a foster child's
23 conditions and needs when considering placement in order to ensure the safety of the
24 pre-existing family unit. Moreover, because the aforementioned defendants were legally
25 responsible for their foster children, including D.G., and the information they portrayed
26 to potential foster homes, a special relationship existed between the COUNTY, SOCIAL
27 SERVICES, WILSON, OMEDA, ABDULLAH, SPROAT and PLAINTIFFS.
28 56.  At all relevant times herein, CASEY and BREDTHAUER defendants were

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

responsible for "work[ing] with children and families to secure a safe, nurturing and permanent family for every child in our care" (*See*: https://www.casey.org/what-we-do/). Thus, a special relationship existed between CASEY, BREDTHAUER and PLAINTIFFS in that CASEY and BREDTHAUER voluntarily assumed responsibility of evaluating, supervising, and intervening in the appropriateness of placement of foster children within PLAINTIFFS' home.

57. At all relevant times herein, DEFENDANTS acted in deliberate indifference to the risk of harm to PLAINTIFFS, in violation of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. §§ 1983, 1988.

58. At all relevant times herein, the COUNTY and SOCIAL SERVICES knew, or reasonably should have known, and were objectively, subjectively, and recklessly indifferent to the fact that:

(a) It had not properly and reasonably evaluated, screened, trained, certified, licensed, and supervised the social workers responsible for handling the care, placement, and supervision of foster children;

(b) That CASEY had not been properly evaluated, screened, trained, certified, and/or licensed to adequately place, supervise, or otherwise advise children referred to it by COUNTY and SOCIAL SERVICES defendants.

(c) It had not properly and reasonably evaluated, screened, and supervised the foster children it was responsible for to prevent the likelihood of harm to others;

(d) It had not properly and reasonably evaluated, screened, and supervised the foster family D.G. was physically transferred to, to ensure it was an appropriate placement.

(e) The 14 year old boy that physically and sexually assaulted PLAINTIFFS was a dependent of the Court, had a history of mental illness, including sexually deviant behaviors, was on the caseload of

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

1       SOCIAL SERVICES and OMEMDA, SPROAT, FATIMAH, and

2       WILSON and was dangerous to PLAINTIFFS and minors such as

3       PLAINTIFFS.

4 59. Prior to the failures of the COUNTY, SOCIAL SERVICES, BREDTHAUER,

5 SPROAT, FATIMAH, OMEDA, WILSON, AND CASEY; PLAINTIFFS enjoyed

6 a life free of danger, harm, safety hazards, and sexual molestation.

7 60. By concealing D.G.'s past sexual propensities and susceptibility to sexual violence

8 and mental health issues from Ms. Cabelka, DEFENDANTS acted in deliberate

9 indifference to the safety of all children, including PLAINTIFFS and subjected them to

10 unnecessary and unreasonable harm. By way of example, in concealing such pertinent

11 information, Ms. Cabelka was precluded from making a well-informed judgement

12 regarding whether to accept D.G. into her home.

13 61. Collectively, DEFENDANTS created the danger that caused PLAINTIFFS' harm

14 and injury.

15 62. The DEFENDANTS can be held liable under the Fourteenth Amendment's Due

16 Process clause for failing to protect an individual from harm by third parties where the

17 state action affirmatively places the PLAINTIFFS in a position of danger, that is, where

18 state action creates or exposes an individual to a danger which he or she would not have

19 otherwise faced. To determine whether an official affirmatively placed an individual in

20 danger, courts ask (1) whether any affirmative actions of the official placed the

21 individual in danger he otherwise would not have faced; (2) whether the danger was

22 known or obvious; and (3) whether the officer acted with deliberate indifference to that

23 danger. (*Henry A. v. Wilden* (2012) 678 F.3d 991, 1002)

24 63. DEFENDANTS knew, or reasonably should have known that placing D.G. within

25 the Cabelka home placed all the other minor children at risk for harm prior to admitting

26 him into the residence. Thereafter, in August of 2016, after D.G. raped the first child in

27 the home, DEFENDANTS knew or reasonably should have known that it was

28 unreasonable and recklessly dangerous to maintain physical custody or control of D.G.

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

within the Cabelka home. DEFENDANTS were subjectively aware of the facts from which an inference could be drawn that there was a substantial risk of serious physical harm to the PLAINTIFFS and that a reasonable official would have been compelled to draw that inference.

64. Even after creating the danger, and learning of D.G.'s sexual tendencies, which included two other sexual assaults on minor boys within the house, DEFENDANTS failed to take any action. In neglecting to address D.G.'s conduct, DEFENDANTS effectively concealed the assaults and thereby placed PLAINTIFFS directly in harm's way.

65. By continuously and repeatedly failing to follow up, investigate, intervene, while simultaneously concealing the occurrences from law enforcement officers, DEFENDANTS acted in deliberate indifference to the safety of all children, including PLAINTIFFS.

66. DEFENDANTS knew that leaving D.G., a deviant child with a history of sexually assaulting young and vulnerable boys, placed PLAINTIFFS at substantial risk of suffering harm and injury. In failing to take any preventative actions, and instead, concealing the incidents, DEFENDANTS acted in conscious disregard for PLAINTIFFS' safety.

67. PLAINTIFFS would not have been exposed to the dangers from D.G. but for the affirmative acts of DEFENDANTS.

68. The negligence and deliberate indifference on the part of DEFENDANTS, and each of them (including the individual Defendants), is not limited to those acts and omissions described above, but also includes the negligent and deliberately indifferent hiring, retaining, appointing, selecting, training, and/or supervising of those persons responsible for the negligent, reckless, intentional, and otherwise wrongful conduct, acts and omissions alleged herein.

## **DIRECT AND VICARIOUS LIABILITY**

69. Defendants, WILSON, OMEDA, ABDULLAH, and SPROAT have statutory

liability pursuant to Government Code § 820(a).

70. COUNTY and SOCIAL SERVICES defendants have statutory liability for their breaches of mandatory duties pursuant to California Government Code § 815.6

71. Defendants, the COUNTY and SOCIAL SERVICES have statutory respondeat superior liability for the wrongful conduct of their agents and employees, including WILSON, OMEDA, ABDULLAH, SPROAT, CASEY, BREDTHAUER, and DOES 1 through 100 pursuant to California Government Code § 815.6.

72. In the alternative, should it be determined CASEY and BREDTHAUER were not agents of the COUNTY or SOCIAL SERVICES and in turn, were independent contractors, CASEY and BREDTHAUER are still liable pursuant to California Government Code § 815.4.

73. When CASEY and BREDTHAUER failed to uphold their mandatory duties to report dangerous situations to authorities, concealed the sexual attacks on the minors in the house, and subject PLAINTIFFS to significant danger and harm, CASEY and BREDTHAUER did so under the color of law under 42 U.S.C. § 1983 because:

    (a) As a foster family agency, providing consulting services directly to the COUNTY and SOCIAL SERVICES, and services such as counseling, recruiting, certifying, and supporting families directly, CASEY and BREDTHAUER, are extensively, carefully and exactingly regulated and controlled by, and effectively acting as the arm of the State of California pursuant to California Health and Safety Code §§ 1502, 1506, 1530.7, and 22 Cal. Code Reg. §§ 88000 through 88087.

    (b) Only the State has the power to take custody and/or supervision, control and possession of a child and then transfer such custody and/or supervision, control, and possession to another person or entity, such as a foster parent or home. In transferring the responsibility, or at minimum, splitting the responsibilities of: providing counseling, educational support, and the provision of resources such as glasses and specialty mattresses, among numerous other duties to CASEY

and BREDTHAUER , the State delegated its power to take custody and/or supervise, control, and possess, a child to CASEY and BREDTHAUER. In transferring custody and/or supervision, control and possession of D.G., CASEY and BREDTHAUER were performing, pursuant to law, a traditional government function exclusively reserved to the State. (*Edmonson v. Leesville Concrete Co., Inc.* (1991) 500 U.S. 614, 624; *Jackson v. Metropolitan Edison Co.* (1974) 419 U.S. 345, 352; *American Mfrs. Mut. Ins. Co. v. Sullivan* (1999) 526 U.S. 40, 54).

(c) The orchestrated conduct of all DEFENDANTS to cause injury to PLAINTIFFS thus equates to a close nexus/joint action.

74. Moreover, CASEY defendants serve as a public policy resource and thus, DEFENDANTS as alleged herein, are pervasively entwined as it relates to the implementation of governmental policies concerning the custody, supervision, care and control of minors. Therefore, "there is such a 'close nexus between the State and the challenged action' [and/or inaction] that seemingly private behavior 'may be fairly treated as that of the State itself'". (*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n* (2001) 531 U.S. 288, 295)(brackets added, quoting *Jackson v. Metropolitan Edison Co.* (1974) 345, 351).

75. As an actual, legal and proximate result of the wrongful acts, omissions and conduct of DEFENDANTS, and each of them as alleged herein, PLAINTIFFS have suffered and incurred physical, sexual, mental, and emotional injuries, medical and counseling expenses, future counseling expenses, continuing and future emotional injury and trauma, lost earning capacity, and harm to and loss of reputation in an amount according to proof at trial.

## SECOND CAUSE OF ACTION
## *MONELL* RELATED CLAIMS
### [By D.C., J.C., and T.C., against all DEFENDANTS]

76. PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though

set forth fully herein.

77.  Defendant the COUNTY, including through its entity SOCIAL SERVICES, established and/or followed policies, procedures, customs and/or practices (collectively referred to as "policy" or "policies"), where these policies were the driving force behind the violations of PLAINTIFFS' Constitutional rights, including those arising under the Fourteenth Amendments to the United States Constitution.  These policies include but are not limited to:

a.  The policy of failing to inquire into a foster child's mental and physical history, despite a legal obligation to do so;

b.  The policy of misrepresenting a foster child's history and needs in order to attain placement;

c.  The policy of neglecting or otherwise failing to respond to requests for assistance and/or interventions;

d.  The policy of intentionally concealing the sexual assaults of minor children;

e.  The policy of threatening to take other children within the home despite the absence of any lawful purpose;

f.  The policy of foregoing with mandatory progress evaluations;

g.  The policy of failing to complete accurate and complete investigation reports;

h.  The policy of failing to inform proper agencies, such as the police department, of all pertinent and relevant facts so as to not trigger an investigation;

i.  The policy of failing to take any meaningful action to remove a child whose presence poses a threat to several other children;

j.  The policy of not leaving a child in a home in which the foster parent has expressed is incapable of caring for the child.

78.  These actions and policies were the direct, actual, legal, and proximate cause of PLAINTIFFS' injuries and damages, in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

## FAILURE TO COMPLY WITH MANDATORY DUTIES
## (Pursuant to Government Code § 815.6) [By D.C., J.C., and T.C., against all DEFENDANTS]

79. PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though set forth fully herein.

80. Government Code section 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

81. The COUNTY, through its subdivision and entity SOCIAL SERVICES, and OMEDA, WILSON, ABDULLAH, and SPROAT, were required to perform an assessment on D.G. to include any and all relevant social, cultural, and physical factors that may impact his placement. (*See* DSS Manual 31-205(.111).) Thus, DEFENDANTS knew, or in the exercise of reasonable diligence, should have known of D.G.'s history, which included sexual and physical abuse, including incidents involving young boys.

82. The COUNTY, through its subdivision and entity SOCIAL SERVICES, and OMEDA, WILSON, ABDULLAH, and SPROAT, were required to assess the characteristics of the other children residing within the home of a potential foster parent. (*See* DSS Manual 31-205(.113).) Thus, DEFENDANTS knew, or in the exercise of reasonable diligence, should have known that placing D.G. in the home of PLAINTIFFS would place PLAINTIFFS at significant risk of injury and harm.

83. At all relevant times herein, DEFENDANTS, and each of them were under a mandatory duty within the meaning of California Government Code § 815.6, to comply with the requirements of California Penal Code § 11166(j), which provides in relevant part:

> (j) a county probation or welfare department **shall immediately**, or as soon
> as practicably possible, report by telephone, fax, or electronic transmission

to the law enforcement agency having jurisdiction over the case, to the

agency given the responsibility for investigation of cased under Section 300

of the Welfare and Institutions Code, and to the district attorney's office

every known or suspected instance of child abuse or neglect, as defined in

Section 11165.6. . . A county probation or welfare department also shall

send, fax, or electronically transmit a writing report thereof within 36 hours

of receiving the information concerning the incident to any agency to which

it makes a telephone report under this subdivision. (Cal . Pen. Code §

11166(j)(emphasis added).)

In turn, California Penal Code § 11165.6 provides in relevant part:

As used in this article, the term "child abuse or neglect **includes physical injury**

or death **inflicted by other than accidental means upon a child by another**

**person, sexual abuse as defined in Section 11165.1. . . the willful harming or**

**injuring of a child or the endangering of the person or health of a child**, as

defined in Section 11165.3 (Emphasis added)

California Penal Code Section 11165.1(a)(3) classifies the intrusion by one person into

the anal opening of another person, including the use of an object, as sexual abuse.

Moreover, California Penal Code section 11165.1(b)(4) deems the intentional touching of

the genitals of a child as sexual abuse. Also, sexual abuse includes '[t]he intentional

masturbation of one's genitals in the presence of a child." (California Penal Code section

11165.1(b)(5).

84. At all relevant times herein, DEFENDANTS failed to timely and adequately

complete the reports required by California Penal Code §11166(j). By way of example,

and without limitation, DEFENDANTS were notified of incidents classified as sexual

abuse as defined above on or about: July 16, 2016, July 18, 2016, September 11, 2016,

September 12, 2016, October 20, 2016, November 21, 2016, November 22, 2016,

December 1, 2016, January 21, 2017.

85. Despite being mandated reporters, the COUNTY, through its subdivision and entity

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

1 | SOCIAL SERVICES, and OMEDA, WILSON, ABDULLAH, SPROAT, and CASEY provided
2 | only cursory reports that were lacking in pertinent and highly relevant information in order to
3 | avoid the initiation of an investigation which would have resulted in the removal of D.G. from
4 | the home. Said failures to perform mandatory duties were an actual, legal and proximate cause
5 | of PLAINTIFFS' injuries and damages alleged herein.

6 | 86. At all relevant times herein, the COUNTY and SOCIAL SERVICES and OMEDA,
7 | WILSON, ABDULLAH, and SPROAT, and each of them, had a mandatory duty within the
8 | meaning of California Government Code § 815.6, to comply with the requirements of the
9 | Regulations of the California Health and Human Services Agency, Department of Social
10 | Services, Child Welfare Services Manual of Policies and Procedures ("DSS Manual"). The
11 | regulations of the DSS Manual: (i) are regulations established by the DSS pursuant to California
12 | Welfare and Institutions Code § 16501; (ii) were duly adopted pursuant to the Administrative
13 | Procedures Act, California Government Code §§ 11340 *et seq.* and filed with the Secretary of
14 | State and therefore "have the force of law and are matters subject to mandatory judicial notice."
15 | (*Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 124, 145).

16 | 87. DSS Manual Regulation 31-130.11(.1)(.11) imposes a duty on social workers to request
17 | law enforcement assistance whenever the physical safety of family members is endangered.
18 | Arguably, the COUNTY, SOCIAL SERVICES, and OMEDA, WILSON, ABDULLAH, and
19 | SPROAT utterly failed to fulfill their legal and ethical obligations to intervene or seek assistance
20 | every single day that D.G. was in the Cabelka household given the safety threat he posed to the
21 | family unit as a whole. Specifically, the COUNTY, SOCIAL SERVICES, and OMEDA,
22 | WILSON, ABDULLAH, and SPROAT utterly failed to fulfill their legal and ethical obligations
23 | to intervene, or seek assistance upon learning of the threat of harm posed by D.G. on or about:
24 | July 16, 2016, July 18, 2016, September 11, 2016, September 12, 2016, October 20, 2016,
25 | November 21, 2016, November 22, 2016, December 1, 2016, January 21, 2017. Said failures to
26 | perform mandatory duties were an actual, legal and proximate cause if PLAINTIFFS' injuries
27 | and damages alleged herein.

28 | 88. The COUNTY, through its subdivision and entity SOCIAL SERVICES, and OMEDA,

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

1 WILSON, ABDULLAH, SPROAT, and CASEY were required to implement grievance
2 procedures to review complaints from foster parents. (DSS Manual section 31-020.) Despite this
3 duty, COUNTY and SOCIAL SERVICES failed to implement and practice any procedures to
4 review complaints, even when the safety of a child is at risk. By way of example, Ms. Cabelka
5 lodged over ten complaints with SOCIAL SERVICES, CASEY, OMEDA, WILSON,
6 ABDULLAH, and SPROAT, and was excessively verbal about the concerns for D.G.'s behavior.
7 But for DEFENDANTS' failures to develop, implement, and abide by such policies and
8 procedures, the complaints pertaining to D.G.'s behavior would have been investigated and
9 PLAINTIFFS would not have been sexually assaulted in the manner in which they were.

10 89. The COUNTY, through its subdivision and entity SOCIAL SERVICES, and OMEDA,
11 WILSON, ABDULLAH, SPROAT, and CASEY were required to respond to all complaints
12 alleging a child is endangered by abuse and were required to perform an in-person investigation
13 or in the alternative, receive Supervisor approval for foregoing with an in-person investigation.
14 (*See* DSS Manual §§ 31-101(.1)-(.3); 31-105(.117). Despite such an affirmative duty,
15 DEFENDANTS failed to interview any of the victims of the abuse and allowed Ms. Cabelka's
16 reports to go unaddressed.

17 90. Upon notification of a risk of abuse, the COUNTY, through its subdivision and entity
18 SOCIAL SERVICES, and OMEDA, WILSON, ABDULLAH, SPROAT, and CASEY, were
19 required to perform an investigation to determine the potential for or the existence of any
20 condition(s) which could potentially ***place any child in the family or household*** at risk of abuse,
21 neglect, or exploitation. (*See* DSS Manual 31-125)(emphasis added). Thus, following two
22 referrals of sexual abuse in the Cabelka home, DEFENDANTS owed a duty to PLAINTIFFS to
23 investigate whether or not he was in danger of abuse, neglect, or exploitation. But for
24 DEFENDANTS' failure to perform such an investigation, D.G. would not have been left in the
25 home to harm PLAINTIFFS.

26 91. The COUNTY, through its subdivision and entity SOCIAL SERVICES, and OMEDA,
27 WILSON, ABDULLAH, and SPROAT were required to complete, and continuously update, a
28 case plan *as **often as the service needs of the child and the family dictated***, to occur at least

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

every six months. *(See* DSS Manual 31-235(.1)(.11)(emphasis added).). Moreover, each updated case plan is required to include any changes in the information within the case plan and *specific information* about the current condition of the child *and family*. (DSS Manual 31-225(.1)(.12). The service needs of both D.G. and the family changed drastically on numerous occasions, without the case plan being amended or even addressed. Had the case plan reviews proceeded as mandated, D.G.'s sexual and violent propensities would have been detailed at length, the appropriateness of D.G.'s placement would have been addressed and PLAINTIFFS would not have been sexually abused.

92. The case plan is so imperative to the safety, wellbeing, and familial functions of the foster child and foster family that the case plan is the guiding principle in the provision of child welfare services. (DSS Manual 31-301(.1).) By failing to create, abide by, and update a case plan for D.G., DEFENDANTS acted in conscious disregard for the safety and wellbeing of all foster children, foster families, and foster children, including PLAINTIFFS.

93. Prior to D.G.'s placement, The COUNTY, through its subdivision and entity SOCIAL SERVICES, and OMEDA, WILSON, ABDULLAH, and SPROAT were required to provide Ms. Cabelka with a case plan identifying the D.G.'s needs, and all educational, medical, familial, placement, and behavioral records, and information of any known or suspected dangerous behavior of the child being placed. (DSS Manual 31-405). Not only was Ms. Cabelka never provided such information, but the to the contrary, was advised on numerous occasions D.G. had no record or history of behavioral, educational, medical, or familial issues. Moreover, every time Ms. Cabelka inquired about D.G.'s placement history, she was advised such information was confidential and could not be disclosed to her, despite the legal obligation to do so.

94. The COUNTY, through its subdivision and entity SOCIAL SERVICES, and OMEDA, WILSON, ABDULLAH, and SPROAT were required to provide respite and out-of-home care providers information of any known or suspected dangerous behaviors of a child, including the date information was provided and specific facts that were provided. (DSS Manual 31-310(.1)(.16).) Similarly, the COUNTY, through its subdivision and entity SOCIAL SERVICES, and OMEDA, WILSON, ABDULLAH, and SPROAT were required to maintain contact with all

1    other professionals working with D.G.. (DSS Manual 31-335(.1).) Thus, the COUNTY, SOCIAL
2    SERVICES, OMEDA, WILSON, ABDULLAH, AND SPROAT were all legally required to
3    relay information pertaining to D.G.'s sexual misconduct to Ms. Cabelka, and people such as
4    CASEY, BREDTHAUER, and D.G.'s therapist, treating psychiatrist, STEPS counselors, and
5    many other mandated reports. Had such information been relayed to Ms. Cabelka, she would
6    have been able to accurately evaluate the appropriateness of D.G.'s placement in her home, and
7    had the appropriate mandated reporters been informed of such actions, proper care, treatment,
8    and steps or removal could have been implemented and addressed.
9    95.  In addition to being legally obligated to inquire and relay information to the appropriate
10   entities, the COUNTY, through its subdivision and entity SOCIAL SERVICES, and OMEDA,
11   WILSON, ABDULLAH, and SPROAT were similarly required to follow-up with Ms. Cabelka
12   at least once per month, in order to assess the appropriateness of the child's placement. (DSS
13   Manual 31-330.) Had such contact occurred as required, the unsuitability of D.G. within the
14   Cabelka home would have been addressed before PLAINTIFFS was violently sexually assaulted.
15   96.  These actions and policies were the direct, actual, legal, and proximate cause of
16   PLAINTIFFS' injuries and damages, in an amount according to proof at trial.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

## [By D.C., J.C., and T.C., against all DEFENDANTS]

20   97.  PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though
21   set forth fully herein.
22   98.  PLAINTIFFS asserts this Cause of Action for Negligence pursuant to California
23   Government Code §§ 815.2, 815.6 and 820.
24   99.  In engaging in the acts, conduct and omissions alleged herein, DEFENDANTS, and each
25   of them, acted unreasonably and below the applicable standard of care. In engaging in the acts,
26   conduct, and omissions alleged herein, DEFENDANTS, and each of them, actually and
27   proximately caused the injuries and damages alleged herein.
28   100.  DEFENDANTS owed PLAINTIFFS an affirmative duty of care to exercise reasonable

1   and ordinary care and skill in investigating, documenting, placing and continuously assessing

2   D.G.'s appropriateness for placement in Ms. Cabelka's home with PLAINTIFFS.

3   101.   The COUNTY owed Ms. Cabelka the right to refuse the continued housing of the foster

4   child in order to protect the safety and wellbeing of the other children in the home, including

5   PLAINTIFFS.

6   102.   In addition to the standard of care and reasonable person duties, DEFENDANTS owed

7   PLAINTIFFS statutory and regulatory duties imposed by both federal and state law, some of

8   which have been specifically referred to hereinabove. Such conduct surmounts to *negligence*

9   *per se.*

10  103.   In addition to the breach of the aforementioned duties, DEFENDANTS failed to act as a

11  reasonably prudent person would in a similar situation. By way of example, a reasonably

12  prudent social worker would not fail to conduct an extensive background investigation and

13  would acquire all relevant and pertinent materials needed as it relates to a foster child prior to

14  placing a foster child in a foster home with other children. By further example, a reasonably

15  prudent social worker would not falsely represent to a foster parent that a potential placement

16  had no history or background of mental illness, when in actuality, the child had suffered from

17  various mental illnesses, deviant behaviors, and sexual propensities for a number of years. As a

18  further example, no reasonably prudent person in a similar situation would cause a child, whom

19  had already committed two acts of sexual violence on a young boy within the home, to remain

20  in the home while the foster parent begged for assistance and/or removal.

21  104.   DEFENDANTS' breaches and violations of the duties owed to PLAINTIFFS were a

22  substantial factor in causing PLAINTIFFS physical, mental, and emotional pain and suffering.

23  **FIFTH CAUSE OF ACTION**

24  **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

25  **[By D.C., J.C., and T.C., against all DEFENDANTS]**

26  105.   PLAINTIFFS hereby incorporate by reference the preceding paragraphs as though set

27  forth fully herein.

28  106.   While D.G. was in the Cabelka home, he was the foster brother of the PLAINTIFFS and

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

1   shared a room with them, and as such, had a close relationship to the PLAINTIFFS.

2   107.  As previously alleged, DEFENDANTS owed an increased duty of care to PLAINTIFFS

3   given their responsibility for the placement, evaluation, and progress of all foster children in

4   their care and custody, including D.G.

5   108.  On August 8, 2016, as a result of the acts and omissions of DEFENDANTS, D.C.

6   was forcibly and violently raped by D.G.. and T.C. was forced to watch his brother as his

7   brother was helplessly raped by D.G.

8   109.  On October 20, 2016 as previously alleged, as a result of the acts and omissions of

9   DEFENDANTS, T.C. was sexually abused by D.G.

10   110.  On January 21, 2017, as previously alleged, as a result of the acts and omissions of

11   DEFENDANTS, J.C. was sexually abused by D.G.

12   111.  As a direct and proximate result of DEFENDANTS' unlawful and negligent conduct,

13   PLAINTIFFS endured severe, substantial, and enduring emotional distress, including

14   humiliation, anxiety, loss of sleep, and various other stress-reactions.

15   112.  The injuries suffered by PLAINTIFFS were foreseeable, and DEFENDANTS knew or

16   should have known that their conduct, upon discovery would inevitably lead to the injuries

17   suffered by PLAINTIFFS.

18

19   **<u>PRAYER FOR RELIEF</u>**

20   1.  For general damages according to proof against all DEFENDANTS;

21   2.  For special damages according to proof against all DEFENDANTS;

22   3.  For punitive damages against all individual DEFENDANTS;

23   4.  For pre-judgment and post-judgment interest, according to law, against all

24       DEFENDANTS;

25   5.  For attorneys' fees against all DEFENDANTS;

26   6.  For costs of suit against all DEFENDANTS;

27   7.  For such other and further relief as the Court deems just and proper.

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

Dated:   February 27, 2018

Respectfully submitted,
LANZONE MORGAN, LLP

By:   s/Jomo Stewart
Jomo K. Stewart, Esq.
jks@lanzonemorgan.com
Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL

**PROOF OF SERVICE**

*D.C, J.C. and T.C., et al v. County of San Diego*
*Case Number:* 18-cv-0013-WQH-KSC

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and am not a party to the within action. My business address is 5001 Airport Plaza Drive, Suite 210, Long Beach, California 90815.

On February 27, 2018, I served the following document(s) described as **FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** on all named interested parties to this action by placing a true copy thereof enclosed in sealed envelopes addressed as set forth on the Service List attached hereto as follows:

XXXX **BY MAIL**: By placing the sealed addressed envelope(s) in collection for mailing following ordinary business practices. I am readily familiar with Lanzone Morgan LLP's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the United States Postal Service on the same day with postage thereon fully prepaid at Long Beach, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing set forth in the affidavit.

_____ **BY OVERNIGHT COURIER**: I caused the above referenced document(s) to be delivered to _____ for delivery to the addresses identified on the attached Service List the following day from the date of this proof of service.

_____**BY E-SERVICE:** I caused the above referenced document(s) to be electronically served to the service addresses as identified on the attached Service List.

_____ **BY FACSIMILE**: I caused the above referenced document(s) to be transmitted via facsimile from facsimile number 562-596-0011 to the facsimile numbers identified on the attached Service List in compliance with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2005(1), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 27th day of February 2018, in Long Beach, California.

Kristi Cole

1

| | |
|---|---|
| Malcolm Schick, Esq.<br>G&P\|SCHICK<br>3170 Fourth Avenue, 3rd Fl.<br>San Diego, California 92103<br>Telephone: 619-718-9790<br>Facsimile: 619-718-9797 | Defendant, CASEY FAMILY PROGRAMS<br>And LAUREL BREDTHAUER |
| Kate D. Jones, Esq.<br>Senior Deputy County Counsel<br>Office of County Counsel<br>1600 Pacific Highway<br>San Diego, California 92101<br>Telephone: 619-531-5888 | Defendant, COUNTY OF SAN DIEGO,<br>COUNTY OF SAN DIEGO HEALTH AND<br>HUMAN SERVICES, CARLOS OMEDA,<br>SARAH WILSON and FATIMAH<br>ABDULLAH |
| Marilyn Sproat<br>1537 H. Street, Space 24<br>Ramona, California 92065<br>Telephone: (760) 789-0688 | Defendant |

PROOF OF SERVICE