UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.C., J.C., and T.C., by and through their Guardian, MELANIE CABELKA; and MELANIE CABELKA, individually,<br><br>                              Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SARAH WILSON; CARLOS OMEDA; FATIMAH ABDULLAH; MARILYN SPROAT; and DOES 1-100,<br><br>                              Defendants. | Case No.:  18-cv-13-WQH-MSB<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the Motions to Dismiss Plaintiffs' Third Amended Complaint filed by Defendants Sarah Wilson, Carlos Olmeda[1], Fatimah Abdullah, and Marilyn Sproat (ECF No. 103) and the County of San Diego (ECF No. 104).

# I.    PROCEDURAL BACKGROUND

On October 3, 2019, Plaintiffs Melanie Cabelka and her minor children, T.C., D.C., and J.C., filed a Third Amended Complaint ("TAC") against Defendants Sarah Wilson, Carlos Olmeda, Fatima Abdullah, Marilyn Sproat (collectively, the "Social Worker

---

[1] Plaintiffs identified this Defendant as "Carlos Omeda" in the Third Amended Complaint. (*See* ECF No. 101).

Defendants"), the County of San Diego (the "County"), and Does 1 through 100.[2] (ECF No. 101). Plaintiffs allege claims against Defendants under 42 U.S.C. § 1983, and T.C., D.C., and J.C. (collectively, "Minor Plaintiffs") allege claims against Defendants for negligence, negligent and/or intentional misrepresentation, and intentional infliction of emotional distress. Plaintiffs seek general damages, special damages, punitive damages, interest, attorneys' fees, and costs.

On October 17, 2019, Defendants filed Motions to Dismiss the TAC for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 103, 104). On November 11, 2019, Plaintiffs filed Oppositions to Defendants' Motions to Dismiss. (ECF Nos. 105, 106). Each Opposition is accompanied by a Request for Judicial Notice.[3] (ECF Nos. 105-1, 106-1). On November 18, 2019, Defendants filed Replies in support of their Motions to Dismiss (ECF Nos. 107, 108) and Oppositions to Plaintiffs' Requests for Judicial Notice. (ECF Nos. 107-1, 108-1).

## II.     FACTUAL ALLEGATIONS

Plaintiff Melanie Cabelka adopted Minor Plaintiffs T.C., D.C., and J.C. after their successful foster or adoptive placements in Cabelka's home. T.C. was born in 2003, D.C. was born in 2004, and J.C. was born in 2009.

In March 2015, Defendant Marilyn Sproat, a County placement worker, requested to place foster children siblings D.G. and M.C. with Cabelka. D.G. and M.C. had been living at a temporary shelter for a prolonged period. Cabelka asked Defendant Sproat why D.G. and M.C. were living at the shelter, how many placements D.G. and M.C. had been in, and why the prior placements failed. Sproat told Cabelka that the children had been in

---

[2] The original sealed Complaint was filed on January 3, 2018. (ECF No. 1). The First Amended Complaint was filed on February 27, 2018. (ECF No. 15). The Second Amended Complaint was filed on February 28, 2019. (ECF No. 67).

[3] Judicial notice of the requested documents is unnecessary for this Order. Plaintiffs' requests for judicial notice are denied. *See Asvesta v. Petroustas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

two previous placements. Sproat told Cabelka that that "the prior adoptive placements had not 'failed,'" and the children were at the shelter through "no fault of their own." (ECF No. 101 ¶¶ 30, 33). Sproat told Cabelka that "it[']s an issue with their foster parent. Don't worry, the kids have no behavioral issues – they are very polite, very well mannered, and very helpful." (*Id.* ¶ 30). Sproat told Cabelka that D.G. and M.C. "have great behaviors. They are really, really happy good kids." (*Id.*). Sproat told Cabelka that D.G. "had no problems other than D.G.'s medical problems, i.e., spina bifida, which was well in hand." (*Id.* ¶ 33). Before committing to D.G. and M.C.'s placement, Cabelka contacted Defendant Fatimah Abdullah, the supervisor of D.G.'s social worker. Defendant Abdulla reiterated that D.G. and M.C.'s prior placements had not failed, that D.G. was "a great kid," and that D.G. had no issues other than spina bifida. (*Id.* ¶ 38).

Sproat and Abdullah's representations were false. The County and Sproat considered D.G. "to be a difficult child to place in part because of his medical issues and in part because of his behavioral and psychological problems which included violent outbursts and sexualized behaviors." (*Id.* ¶ 31). The County, Sproat, and Abdullah knew, or should have known, that both of D.G.'s previous foster parents and D.G.'s school filed reports informing the County and County social workers that "D.G. had been repeatedly caught smearing poop on the walls; had expressed suicidal thoughts; [and] had, on multiple occasions, destroyed property in violent physical outbursts . . . ." (*Id.* ¶ 35). The County, Sproat, and Abdullah knew, or should have known, that "one of the reasons D.G. had been removed from his immediately prior adoptive placement with a woman named Tanya, was because he had been sexually molesting another male child in Tanya's care." (*Id.* ¶ 36). In addition, there were indications in D.G.'s CWS/CMS records that D.G. had been the victim of sexual abuse, and both D.G. and M.C. "had witnessed the rape of their older sister, Crystal." (*Id.* ¶¶ 36, 41). Sproat and Abdullah failed to disclose, and "actively suppressed," this information "out of concern that if they had disclosed all of the relevant information to [Cabelka], she would refuse to allow D.G. into her home." (*Id.* ¶ 31).

18-cv-13-WQH-MSB

Cabelka accepted D.G. and M.C. as adoptive placements. From March 2015 through January 2017, Cabelka experienced behavioral issues with D.G. D.G had poor hygiene, smeared feces on the walls, cut open and destroyed two beds, and downloaded and viewed "homosexual child pornography." (*Id.* ¶ 58). D.G.'s school informed Cabelka that D.G. had suicidal thoughts and that his fecal smearing and hygiene issues were "an ongoing problem." (*Id.* ¶ 46). After each incident, Cabelka contacted Defendant Abdullah or Defendant Carlos Olmeda, D.G.'s social worker, to report the incidents and further inquire about D.G.'s history. On many occasions, Cabelka never received a response. When Cabelka did receive a response, she was told that D.G. "can't smell himself" (*id.* ¶ 44) and that "there were no previous incidents of this nature and [ ] D.G. had no known psychiatric impairments or behavioral problems." (*Id.* ¶ 45). Defendant Olmeda reiterated the "false assurances that there were no known behavioral or mental health issues for D.G." (*Id.* ¶ 50). When Cabelka reported that D.G. downloaded and viewed child pornography, Olmeda assured Cabelka that "a report would be made and investigation would ensue." (*Id.* ¶ 58). The County never conducted an investigation.

Cabelka did not have the ability to obtain D.G.'s mental health information because she had not received medical cards, waivers, or records from the County. Cabelka attempted to discover information about D.G.'s history and behavioral problems from other sources. Cabelka contacted D.G.'s Court Appointed Special Advocate who confirmed that D.G. had a history of suicidal thoughts, hygiene issues, fecal smearing, and violent outbursts. The Court Appointed Special Advocate "disclosed to [Cabelka] that D.G. witnessed the rape of his older sister, and that D.G. had sexually acted out with a boy in his prior adoptive home – and was removed from that home as a result." (*Id.* ¶ 64).

In June 2016, the County informed Cabelka that an "experienced" social worker, Defendant Sarah Wilson, would be taking over D.G.'s case. (*Id.* ¶ 62). On June 20, 2016, Cabelka contacted Defendant Wilson "requesting assistance because [Cabelka] did not feel she had the ability to care for D.G. due to his increasing instances of sexual behaviors." (*Id.* ¶ 63). Wilson "refused to disclose any of the negative information available to her in

the CWS/CMS records." (*Id.* ¶ 63). Wilson failed to provide assistance and told Cabelka that "if she had D.G. removed from her home, [Cabelka] would no[t] be permitted to adopt [M.C.] with whom [Cabelka] had become bonded." (*Id.* ¶ 63). Cabelka continued to report D.G.'s behaviors to Wilson, and the County failed to investigate Cabelka's reports. Cabelka told Wilson she "did not feel safe having D.G. in her home and she could not commit to adopting him due to his behaviors." (*Id.* ¶ 64).

> Despite DEFENDANTS' knowledge of D.G's propensities for sexual and physical violence and outbursts, and [Cabelka's] persistent reporting and pleas for help, DEFENDANTS, and each of them, failed to take any action to remove this dangerous child, D.G., from [Cabelka's] home, or even to warn [Cabelka] of his known dangerous propensities.

(*Id.* ¶ 67).

On August 8, 2016, D.G. "violently sodomize[d] D.C." (*Id.* ¶ 68). Cabelka reported the assault to Defendant Wilson. Cabelka told Wilson, "I want D.G. out of here." (*Id.* ¶ 70). Wilson told Cabelka that she could not just "dump" D.G. without providing notice to the agency, that Cabelka should not go to the police, and that the rape allegations would be investigated. (*Id.*). Wilson told Cabelka that her "adoption of M.C. would be scuttled if [Cabelka] did not allow D.G. to remain in her home while the rape allegations were investigated and sorted out." (*Id.*). Cabelka requested that D.G. "be removed from her home as soon as possible." (*Id.*). The County failed to investigate the assault or remove D.G.

On September 12, 2016, Cabelka contacted Wilson "begging for respite care for D.G. due to her concerns for the safety and well being of her and her other children . . . . [Cabelka] complained that she needed help now . . . ." (*Id.* ¶ 75). Wilson did not remove D.G. "On October 20, 2016, D.G. sexually assaulted T.C." (*Id.* ¶ 76). Cabelka reported the assault, and Defendants "threaten[ed] and coerc[ed] [Cabelka] into keeping D.G. in the Cabelka home" and withdrawing her removal requests. (*Id.* ¶¶ 140, 167). When Cabelka again asked Wilson why D.G. had been removed from his previous adoptive placement, Wilson told Cabelka that information was "confidential." (*Id.* ¶ 80).

5

"On January 21, 2017, D.G. sexually assaulted J.C." (*Id.* ¶ 90). Cabelka reported the assault to the CWS hotline, dropped D.G. off at the "STEPS program," and reported the assault to the police. (*Id.* ¶ 94). When Cabelka asked the police why they had not investigated the prior reports of D.G.'s sexual assaults, the police told Cabelka that "the reports that had been provided to the police were so vague and nondescript that they did not prompt an investigation." (*Id.* ¶ 95). "The bulk of the details [Cabelka] had provided to Defendants . . . were not even in the reports, and the report about T.C. was not even listed." (*Id.*).

D.G. did not return to the Cabelka home. Cabelka "sought and obtained a stay away order from the court to prevent D.G. from being at T.C.'s. D.C.'s, and J.C.'s school as well as anywhere near their family home." (*Id.* ¶ 100). "In September 2017, the San Diego District Attorney filed felony delinquency charges against D.G. for the sexual abuse of [Cabelka's] children." (*Id.* ¶ 102). The County still solicits D.G. for placement by describing him as "a good kid needing a loving home" and "continues to refrain from disclosing D.G.'s known dangerous propensities to his current placements." (*Id.* ¶ 103).

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation omitted).

## IV.    SECTION 1983 CLAIMS

Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 by depriving Plaintiffs of their federal rights guaranteed by the "case plan provisions" and the "records provisions" of the Adoption Assistance and Child Welfare Act of 1980 (the "Adoption Act"), 42 U.S.C. §§ 671(a)(16), 675(1), and 675(5)(D). Plaintiffs further allege that the Social Worker Defendants violated 42 U.S.C. § 1983 by depriving Plaintiffs of their federal rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

### a. **Contentions**

The Social Worker Defendants contend that that the Adoption Act does not apply to County employees and does not confer enforceable rights on Plaintiffs. The Social Worker Defendants contend that they did not act with "deliberate indifference" to a "known and obvious danger" in violation of the Fourteenth Amendment. (ECF No. 103-1 at 16). The Social Worker Defendants further contend that they are entitled to qualified immunity. The County contends that Plaintiffs fail to allege that the Social Worker Defendants acted pursuant to a County policy or custom.

Plaintiffs contend that the Adoption Act applies to the Social Worker Defendants and confers enforceable federal rights on Plaintiffs. Plaintiffs contend that the Social

7

Worker Defendants are liable under the Fourteenth Amendment state-created danger doctrine. Plaintiffs contend that the Social Worker Defendants are not entitled to qualified immunity. Plaintiffs contend that they sufficiently allege that the Social Worker Defendants acted pursuant to a County policy or custom.

### b. **Legal Standard**

42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001); *see* 42 U.S.C. § 1983 (providing a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)).

### c. **Section 1983 Claims Against the Social Worker Defendants**

Plaintiffs allege pursuant to 42 U.S.C. § 1983 that the Social Worker Defendants violated Plaintiffs' rights under the Adoption Act and the Fourteenth Amendment Due Process Clause.

### 1. **Application of the Adoption Act to Social Worker Defendants**

The Social Worker Defendants contend that the Adoption Act does not apply to municipalities or municipal employees. The Social Worker Defendants contend that even if the state delegated its responsibilities under the Adoption Act to the County, "it is only the state that can violate any federal right guaranteed by the Act . . . ." (ECF No. 103-1 at 13).

8

Plaintiffs contend that the Adoption Act applies to states and municipalities to whom the state has delegated its responsibilities. Plaintiffs assert that the state delegated its authority for executing the foster system to the County, so County employees are required to comply with the Adoption Act's mandates.

Congress enacted the Adoption Act to enable each state to provide foster care and adoption assistance and to "promote State flexibility in the development and expansion of a coordinated child and family services program that utilizes community-based agencies and ensures all children are raised in safe, loving families." 42 U.S.C. §§ 621, 670. The Adoption Act establishes a federal program to reimburse states for expenses incurred in administering child welfare, foster care, and adoption services. To obtain federal funds, the state must develop a plan for child welfare services, foster care, and adoption assistance that meets the Adoption Act's requirements. 42 U.S.C. §§ 622, 671. In addition to other requirements, the state's plan must provide for the development of a "case plan" for each foster child and a "case review system" to ensure that a foster child's health and education records are provided to the foster parent. *See* 42 U.S.C. §§ 671(a)(16), 675(1), 675(5), 675a. The state's plan must mandate that the plan shall be effective "in all political subdivisions of the State, and, if administered by them, be mandatory on them." 42 U.S.C. § 671(a)(3).

In *Henry A. v. Willden*, the Court of Appeals for the Ninth Circuit examined the case plan and records provisions of the Adoption Act, as well as the Fourteenth Amendment's application to county and state foster services. 678 F.3d 991 (9th Cir. 2012). In *Henry A.*, "thirteen children who are in or have been in the legal custody of the State of Nevada and/or Clark County and placed in foster care" filed suit against the Director of the Nevada Department of Health and Human Services, the Administrator of the Nevada Division of Child and Family Services, the Clark County Manager, the Director of Clark County Department of Family Services, and Clark County. 2:10-cv-00528-RCJ-PAL, 2010 U.S. Dist. LEXIS 115006, at *3, *8 (D. Nev. Oct. 26, 2010), *reversed in part by* 678 F.3d 991 (9th Cir. 2012). The plaintiffs alleged that the State of Nevada transferred its

responsibilities for providing foster care services to Clark County but retained supervision and oversight of the foster care system. The plaintiffs alleged that as a result of Clark County's failed foster care system, the plaintiffs were subject to "severe physical abuse, lack of necessary medical treatment, and multiple placement disruptions." *Id.* at *4. The plaintiffs brought claims against the county and state defendants for violating § 1983 by depriving plaintiffs of their federal rights under the Adoption Act and their substantive due process rights under the Fourteenth Amendment. *Id.* at *8. The defendants moved to dismiss the plaintiffs' claims on the grounds that the defendants were entitled to qualified immunity. *Id.* at *9, *16. The United States District Court for the District of Nevada granted the defendants' motion to dismiss and held that the defendants were entitled to qualified immunity. *Id.* at *60-61.

The plaintiffs appealed the district court's decision to the Court of Appeals for the Ninth Circuit. *Henry A.*, 678 F.3d 991. The court of appeals reversed the district court's dismissal of the plaintiffs' § 1983 claims. *Id.* at 1008-09. The court of appeals held that the district court erred in finding that the plaintiffs failed to state a claim under the state-created danger doctrine. *Id.* at 1003. The court of appeals further held that the district court erred in dismissing the plaintiffs' claims under the case plan and records provisions of the Adoption Act on the basis that the provisions are not privately enforceable. *Id.* at 1006.

In this case, Plaintiffs allege that "[t]he State of California expressly delegated its foster care licensing responsibilities and duties to the County of San Diego . . . ." (ECF No. 101 ¶ 109). Plaintiffs allege that the Social Worker Defendants are employees of the County of San Diego Health and Human Services Agency, "a local public entity and operating subdivision" of the County. (*Id.* ¶ 8). Plaintiffs allege that the Social Worker Defendants violated the case plan and records provisions of the Adoption Act. The text of the Adoption Act requires that a state's plan must mandate that the plan shall be effective "in all political subdivisions of the State, and, if administered by them, be mandatory on them." 42 U.S.C. § 671(a)(3). In *Henry A.*, the Court of Appeals for the Ninth Circuit applied the case plan and records provisions of the Adoption Act to the Clark County

Manager, the Director of Clark County Department of Family Services, and Clark County. The text of the Adoption Act and Ninth Circuit precedent dictate that the case plan and records provisions of the Adoption Act are enforceable against counties to whom the state has delegated its responsibilities under the Adoption Act and county employees. *See Laurie Q. v. Contra Costa Cty.*, 304 F. Supp. 2d 1185, 1190 (N.D. Cal. 2004) ("Under section 671(a)(16) a state *or county* claiming eligibility for benefits under the [Adoption Act] must institute a plan that provides for development of a case plan . . . ." (emphasis added) (quotation omitted)). The Court concludes that Plaintiffs have stated a "cognizable legal theory" at this stage in the proceedings that the Adoption Act applies to the Social Worker Defendants. *Shroyer*, 622 F.3d at 1041.

### 2. Plaintiffs' Federal Rights Under the Adoption Act

The Social Worker Defendants contend that the Adoption Act does not create a federal right enforceable by Plaintiffs in a § 1983 action because Plaintiffs are not the intended beneficiaries of the Adoption Act. The Social Worker Defendants contend that the Adoption Act was intended to benefit foster children and their parents; it was not intended to benefit foster parents or other children living with a foster child.

Plaintiffs contend that they can enforce the case plan and records provisions of the Adoption Act under § 1983. Plaintiffs contend that the case plan and records provisions directly benefit foster parents like Cabelka. Plaintiffs contend that the Adoption Act creates a standard of conduct to "protect and promote the welfare of all children," including the Minor Plaintiffs in this case. (ECF No. 105 at 19).

"In order to seek redress through § 1983 [ ], a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing*, 520 U.S. at 340 (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)). The court applies a three-step test to determine whether a federal statute creates an individual right that is enforceable by the plaintiffs in a § 1983 action. *Id.* at 340-41.

The *Blessing* test requires: 1) that Congress intended the statutory provision to benefit the plaintiff; 2) that the asserted right is not so "vague and

amorphous" that its enforcement would strain judicial competence; and 3) that the provision couch the asserted right in mandatory rather than precatory terms.

*Watson v. Weeks*, 436 F.3d 1152, 1158 (9th Cir. 2006) (quoting and citing *Blessing*, 520 U.S. at 340-341). "If a statutory provision satisfies the *Blessing* test, it is presumptively enforceable through § 1983." *Henry A.*, 678 F.3d at 1005 (citing *Watson*, 436 F.3d at 1158). This presumption is rebutted "if Congress expressly or impliedly foreclosed enforcement" by creating "'a comprehensive enforcement scheme incompatible with individual enforcement.'" *Watson*, 436 F.3d at 1158-59 (quoting *Blessing*, 520 U.S. at 341).

In *Henry A.*, the district court determined that the state and county defendants were entitled to qualified immunity on the plaintiffs' § 1983 claim based on violations of the case plan and records provisions of the Adoption Act. 2010 U.S. Dist. LEXIS 115006, at *28. The district court explained that "these provisions do not contain rights-creating language," so the plaintiffs failed to show that the defendants violated any clearly established federal right. *Id.* at *28-29. The Court of Appeals for the Ninth Circuit reversed the district court's decision. *Henry A.*, 678 F.3d at 1006. The court of appeals stated:

> The district court concluded that [the case plan and records provisions] do not contain sufficient "rights-creating language" to satisfy the first prong of the *Blessing* test. We disagree and join the majority of federal courts in holding that the case plan [and records] provisions are enforceable through § 1983.

*Id.* at 1006, 1009.

The court of appeals applied the *Blessing* test and determined that the case plan and records provisions of the Adoption Act conferred individual rights enforceable under § 1983 on the foster children plaintiffs. *Id.* at 1006, 1008. The court of appeals first examined the case plan provisions, §§ 671(a)(16) and 675(1). *See id.* at 1007 fn. 8 ("[W]e must examine each provision separately rather than the statute as a whole." (citing *ASW v. Oregon*, 424 F.3d 970, 977 (9th Cir. 2005)). The case plan provision of § 671(a)(16) provides:

**(a) Requisite features of a State plan.** In order for a state to be eligible for payments under this part, it shall have a plan approved by the Secretary which—

. . .

(16) provides for the development of a case plan (as defined in section 475(1) [42 U.S.C. § 675(1)] and in accordance with the requirements of section 475A [42 U.S.C. § 675a]) for each child receiving foster care maintenance payments under the State plan . . . [.]

Section 675(1) "provides a detailed definition of what a case plan must include, such as the child's health and educational records, a description of the child's permanency plan, and a plan for ensuring the child's stability." *Henry A.*, 678 F.3d at 1006 (citing 42 U.S.C. § 675(1)); *see* 42 U.S.C. §§ 675(1)(C)(iii), (v), (vii). Section 675(1) requires, in relevant part, that the case plan include "[a] plan for ensuring that the child receives safe and proper care and that services are provided to the parents, child, and foster parents . . . ." 42 U.S.C. § 675(1)(B).[4]

The court of appeals explained that the first prong of the *Blessing* test "requires 'rights-creating language,' meaning that the text of the statute 'must be phrased in terms of the persons benefitted.'" *Henry A.*, 678 F.3d at 1005 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 284 n. 3 (2002)). The court of appeals determined that the case plan provisions "unambiguously require[ ] the State to provide for the development of a case plan 'for each child,'" evidencing Congress's intent that the case plan provisions benefit foster children. *Id.* at 1007. The court of appeals held that "the first *Blessing* factor weighs in favor of an enforceable right" by the foster children plaintiffs. *Id*. at 1007. The court of appeals further determined that the case plan provisions satisfy the second and third *Blessing* factors because there is "no ambiguity as to what [the state is] required to do[.]" *Id*. (alterations in original) (quotation omitted). The court of appeals concluded that there

---

[4] The court noted that, "as we recognized in *ASW*, Congress has directed that statutory provisions within the [Adoption Act] should not 'be deemed unenforceable because of its inclusion in a section . . . requiring a State plan or specifying the required contents of a State plan.'" *Henry A.*, 678 F.3d at 1007 (quoting *ASW*, 424 F.3d at 977 n. 11).

is no indication Congress foreclosed enforcement of the case plan provisions under § 1983, so "the case plan provisions of the [Adoption Act] . . . are enforceable through § 1983." *Id.* at 1008.

The court of appeals then applied the *Blessing* test to the records provisions, §§ 671(a)(16), 675(1), and 675(5)(D). The records provision of § 671(a)(16) requires the state to develop a plan that "provides for a case review system which meets the requirements described in section 475(5) [42 U.S.C. § 675(5)] and 475A . . . ." Section 675(5)(D) requires that the case review system must ensure that

> a child's health and education record . . . is reviewed and updated, and a copy of the record is supplied to the foster parent or foster care provider with whom the child is placed, at the time of the placement of each child in foster care . . . .

Section 675(1) details the information that must be included in the health and education record, including "the child's school record," "the child's known medical problems," and "any other relevant health and education information concerning the child determined to be appropriate by the State agency." 42 U.S.C. § 675(1)(C)(iii), (v), (vii).

The court of appeals determined:

> We are persuaded by the statute's repeated focus on the individuals benefitted by §§ 671(a)(16) and 675(5)(D): A case review system must be provided with respect to each child; the child's health and education record must be provided to the foster parent; and this must happen at the time the child is placed in foster care . . . . [T]he "focus on individual foster children," and the language "designating foster parents" to receive a benefit on their foster child's behalf, "together unambiguously reflect Congress's intent" that the records provisions benefit individual foster children and parents.

*Henry A.*, 678 F.3d at 1008-09 (quoting *Cal. State Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 981 (9th Cir. 2010)). The court of appeals concluded that "the records provisions can be enforced through § 1989." *Id.* at 1009.

In this case, Plaintiffs seeking to enforce the Adoption Act under § 1983 are D.G.'s former foster parent and his former foster siblings[5]. The text of the case plan and records provisions mandates that the state's plan ensure that services and records are supplied to foster parents. Section 675(1)(B) requires that a case plan include "[a] plan for assuring . . . that services are provided to the parents, child, and foster parents . . . ." Section 675(5)(D) requires a case review system to ensure that a child's health and education record "is supplied to the foster parent." The court of appeals explained in *Henry A.* that Congress intended the records provisions to benefit foster parents. *See* 678 F.3d at 1009 ("[T]he 'focus on individual foster children,' and the language 'designating foster parents' to receive a benefit on their foster child's behalf, 'together unambiguously reflect Congress's intent' that the records provisions benefit individual foster children and their parents." (quotation omitted)); *see also Wagner*, 624 F.3d at 979-80 (holding that 42 U.S.C. §§ 672(a) and 675(4)(A), which establish requirements for foster care maintenance payments, create rights enforceable by foster parents, even though neither section explicitly references foster parents). The text of the case plan and records provisions and Ninth Circuit precedent indicate that Congress intended §§ 671(a)(16), 675(1), and 675(5)(D) to be enforceable under § 1983 by foster parents like Cabelka. There is no ambiguity in what the state and County is required to do or provide, and there is no other administrative remedy available to Cabelka. However, there is no indication in the case law or the text of the case plan and records provisions that Congress intended the Adoption Act to benefit foster siblings.

The Court concludes that the Minor Plaintiffs have failed to plead a violation of their federal rights under the Adoption Act enforceable under § 1983. The Court concludes that foster parent Cabelka has sufficiently pled a claim under § 1983 at this stage in the proceedings for violations of §§ 671(a)(16), 675(1), and 675(5)(D) of the Adoption Act. ///

---

[5] The Court uses the term "foster siblings" to refer to children living in the same house as the foster child who are not presently in the foster system.

### 3. Qualified Immunity on Cabelka's Adoption Act Claim[6]

The Social Worker Defendants contend that there was no existing precedent that would have put them on notice that failing to comply with the Adoption Act would violate the federal rights of D.G.'s foster parent. The Social Worker Defendants contend that *Henry A.* would not put the Social Worker Defendants on notice that their alleged actions would violate a foster parent's federal rights. The Social Worker Defendants contend that "the only other Ninth Circuit cases that address federally enforceable rights under the Adoption Act analyzed <u>different</u> provisions of the Act" than Plaintiffs allege violations the Social Worker Defendants violated. (ECF No. 103 at 21).

Plaintiffs contend that the Adoption Act has required social workers to develop a case plan and provide foster parents with the prior history of foster children since 1980. Plaintiffs contend that by placing D.G., "a known sexual predator, in a home with children aged 13, 12, and 6," and "repeatedly conceal[ing] D.G.'s clear and obvious dangerous history," the Social Worker Defendants violated these clearly established federal rights. (ECF No. 105 at 24-25).

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If "a complaint sufficiently alleges that a government official violated a federal constitutional or statutory right, that official is entitled to qualified immunity from money damages if the right was not 'clearly established' at the time of the alleged conduct." *Henry A.*, 678 F.3d at 999 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "A Government official's conduct violates clearly established law when, at the time of the challenged

---

[6] The Court has concluded that the Minor Plaintiffs fail to state claims under § 1983 for violations of the Adoption Act. Accordingly, the Court does not address whether the Social Worker Defendants are entitled to qualified immunity on the Minor Plaintiffs' Adoption Act claims.

conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft*, 563 U.S. at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see Henry A.*, 678 F.3d at 1000 (explaining that the court must determine "the contours" of the plaintiff's "clearly established rights at the time of the challenged conduct" and then "examine whether a reasonable official would have understood that the specific conduct alleged by Plaintiffs violated those rights"). "'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Anderson*, 483 U.S. at 640 (internal citation omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

The Court has determined that Cabelka has sufficiently alleged that the Social Worker Defendants violated Cabelka's federal rights under the Adoption Act at this stage in the proceedings. The Adoption Act requires that a state's plan must mandate that the plan shall be effective "in all political subdivisions of the State, and, if administered by them, be mandatory on them." 42 U.S.C. § 671(a)(3).The text of the case plan and records provisions require the state to create a case plan that includes "[a] plan for assuring . . . that services are provided to the . . . foster parents . . . ," 42 U.S.C. § 675(1)(B), and a case review system to ensure that a child's health and education record "is supplied to the foster parent." 42 U.S.C. § 675(5)(D). In *Henry A.*, the court of appeals applied the case plan and records provisions to Clark County and Clark County officials. The court of appeals further held that foster children have an individual right to seek enforcement of the case plan and records provisions, explaining that Adoption Act was intended to benefit both foster children and foster parents. *Id.* at 1009; *see Wagner*, 624 F.3d at 982 (holding that "Foster Parents have access to a remedy under § 1983 to enforce their federal right" under §§ 672(a) and 675(4)(A) of the Adoption Act).

At the time of the Social Worker Defendants' alleged conduct, a reasonable County social worker was on notice that he or she was required under the Adoption Act to provide a foster parent with a foster child's medical and education records and to create an adequate case plan to assure that services are provided to the foster parent. Based on the allegations at this stage in the proceedings, the Court concludes that the Social Worker Defendants are not entitled to qualified immunity for the alleged violations of Cabelka's federal rights under the Adoption Act.

### 4. Fourteenth Amendment State-Created Danger

The Social Worker Defendants contend that they have no duty under the Fourteenth Amendment to protect individuals from private violence. The Social Worker Defendants contend that they did not place Plaintiffs in danger they otherwise would not have faced. The Social Worker Defendants contend that it was Cabelka's decision to allow D.G. to remain in the Cabelka home so Cabelka could adopt D.G.'s sister.

Plaintiffs contend that the state-created danger doctrine applies because the Social Worker Defendants created or exposed Plaintiffs to a risk of harm, and the danger caused Plaintiffs injury. Plaintiffs contend that the Social Worker Defendants were aware of D.G.'s dangerous propensities and refused to warn Plaintiffs. Plaintiffs contend that the Social Worker Defendants refused to act when Cabelka reported D.G.'s sexual assaults.

The Fourteenth Amendment typically "does not impose a duty on government officers to protect individuals from third parties." *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir. 2007). There are two exceptions to this general rule: the "special relationship" exception and the "state-created danger exception." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). The special relationship exception applies when the state "takes a person into its custody and holds him there against his will." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989).

The state-created danger exception applies "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *Patel*, 648 F.3d at 971-72 (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). To

state a claim under the state-created danger exception, the plaintiff must allege that "(1) [ ] affirmative actions of the official placed the individual in danger he otherwise would not have faced; (2) [ ] the danger was known or obvious; and (3) [ ] the officer acted with deliberate indifference to that danger." *Henry A.*, 678 F.3d at 1002 (citing *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062-64 (9th Cir. 2006)). A state actor acts with deliberate indifference where there was an "objectively substantial risk of harm," the official was "subjectively aware of facts from which an inference could be drawn that a substantial risk of harm existed," and "either the official actually drew that inference or [ ] a reasonable official would have been compelled to draw that inference." *Tamas*, 630 F.3d at 845.

In *Henry A.*, the foster children plaintiffs alleged that the state and county defendants "remov[ed] Plaintiffs from their homes and plac[ed] them in the care of foster parents . . . who were unfit to care for them and posed an imminent risk of harm to Plaintiffs' safety." 678 F.3d at 1002. The plaintiffs alleged that the defendants placed one child in a foster home "that had a known history of neglect," allowed another foster child "to have unsupervised visits with his grandparents despite having knowledge that they had abused him," and placed a third foster child "in an out-of-state facility that had a known history of chronic neglect and abuse." *Id.* The district court determined that the plaintiffs failed to state a claim under the state-created danger doctrine. *Id.* The district court cited the dissenting opinion in *Kennedy* and determined that "the complaint did not sufficiently allege that Defendants did more than simply expose the plaintiff to a danger that already existed because Defendants merely place[d] foster children into an already broken system." *Id.* (quotations omitted).

The court of appeals reversed the decision of the district court, finding that "[t]he district court's reasoning was erroneous." *Id.* The court of appeals explained that the state-created danger doctrine "only applies in situations where the plaintiff was directly harmed *by a third party* — a danger that, in every case, could be said to have 'already existed.'" *Id.* The court of appeals explained:

> [T]he point of the state-created danger doctrine is that the affirmative actions

of a state official "create[d] or expose[d] an individual to a danger *which he or she would not have otherwise faced*." *Kennedy*, 439 F.3d at 1060 (opinion of the court) (emphasis added). This is precisely what Plaintiffs have alleged here. They allege that Defendants knew of the danger of abuse and neglect that Plaintiffs faced in certain foster homes and acted with deliberate indifference by exposing Plaintiffs to that danger anyway. This is sufficient to state a claim under the controlling opinion in *Kennedy*. The fact that the dangerous foster homes "already existed" is irrelevant.

*Id.* at 1002-03 (second and third alterations in original).

In this case, Plaintiffs allege that the Social Worker Defendants knew of the danger of sexual abuse that the Minor Plaintiffs faced and acted with deliberate indifference by exposing them to that danger anyway. Plaintiffs allege that D.G.'s CWS/CMS records and juvenile case file indicate that D.G. had been the victim of sexual abuse and that D.G. had "known behavioral issues including . . . sexually aggressive and deviant behaviors." (ECF No. 101 ¶ 45). Plaintiffs allege that the Social Worker Defendants had access to D.G.'s CWS/CMS records and juvenile case file and were aware of D.G.'s history of violent and sexually deviant acts. Plaintiffs allege that the Social Worker Defendants knew that D.G. had been removed from his prior placement "because he had been sexually molesting another male child" in his foster parent's care. (*Id.* ¶ 36). Plaintiffs allege that the Social Worker Defendants knew that Cabelka had three young male children. Plaintiffs allege that the Social Worker Defendants "lied, and falsely stated that D.G. had no behavioral, medical, and/or psychological issues, . . . no dangerous propensities, no sexually deviant behaviors, no violent outbursts, and that D.G. was in foster care through no fault of his own." (*Id.* ¶ 134). Plaintiffs allege that the Social Worker Defendants "suppressed" the fact that "D.G. sexually molested another child in his previous foster home." (*Id.* ¶ 133). Plaintiffs allege that Cabelka asked Defendants Sproat and Abdullah questions about D.G.'s history, including why D.G.'s prior adoptive placements failed and why D.G. was at the temporary shelter, "before [Cabelka] committed to [D.G.'s] placement in her home." (*Id.* ¶ 38). Plaintiffs allege that when Cabelka reported D.G.'s behaviors, the Social Worker Defendants told Cabelka that all of D.G.'s behaviors were new and that none of D.G.'s

concerning behaviors had been noted in D.G.'s file. Plaintiffs allege that the Social Worker Defendants lied about, and suppressed, D.G.'s history in order to induce Cabelka to accept D.G. as an adoptive placement and to allow him to remain in her home. Plaintiffs allege that the Social Worker Defendants assured Cabelka that her reports of sexual assault would be investigated and that the County would remove D.G. from the Cabelka home. Plaintiffs allege that the Social Worker Defendants failed to investigate Cabelka's reports and failed to remove D.G. Plaintiffs allege that the Minor Plaintiffs were exposed to sexual abuse as a result of the Social Worker Defendants' conduct.

The facts alleged support the inference that Cabelka would not have accepted D.G. into her home if Defendants Sproat or Abdullah had informed her of D.G.'s past sexual misconduct. The facts alleged support the inference that the Social Worker Defendants' alleged statements induced Cabelka to allow D.G. to remain in her home and that that the affirmative actions of the Social Worker Defendants exposed the Minor Plaintiffs to a danger of sexual assault that they would not otherwise have faced. The facts alleged support a reasonable inference that D.G. posed an "objectively substantial risk of harm" to the Minor Plaintiffs, that the Social Worker Defendants were "subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed," and that the Social Worker Defendants "actually drew that inference." *Tamas*, 630 F.3d at 845. However, the facts alleged do not support an inference that the affirmative actions of the Social Worker Defendants placed foster parent Cabelka in any danger that she otherwise would not have faced.

The Court concludes that Cabelka fails to state a claim under the Fourteenth Amendment Due Process Clause. The Court concludes that the Minor Plaintiffs have stated a cause of action under § 1983 at this stage in the proceedings for violations of their Fourteenth Amendment rights to be free from state-created danger.

### 5. Qualified Immunity on Minor Plaintiffs' Fourteenth Amendment Claims[7]

The Social Worker Defendants contend that "no binding precedent has held that the [state-created danger] doctrine applies to placing a foster child in a home where there is a known danger of abuse <u>to a third party</u> at the hands of the foster child. (ECF No. 103-1 at 22). The Social Worker Defendants contend that "there was no case law putting Social Worker Defendants on 'clear notice' that placing a foster child with a history of behavioral issues and sexual abuse into a home with a third party might violate the third party's substantive due process rights." (*Id.*).

Plaintiffs contend that "[i]t is clearly established that a government official violates substantive due process rights by creating or exposing an individual to a risk of harm – that they otherwise would not have faced." (ECF No. 105 at 23). Plaintiffs contend that the Social Worker Defendants' "conduct in unleashing a known sexual predator on an unsuspecting family without any warning meets this standard." (*Id.*).

The Court has determined that the Minor Plaintiffs have sufficiently alleged that the Social Worker Defendants violated the Minor Plaintiffs' substantive due process rights at this stage in the proceedings. "It is beyond dispute" that at the time of the Social Worker Defendants' alleged conduct, "state officials could be held liable where they affirmatively and with deliberate indifference placed an individual in danger she would not otherwise have faced." *Kennedy*, 439 F.3d at 1066; *see Mayshack v. Gonzales*, 437 F. App'x 615, 620 (9th Cir. 2011) (finding that it was "clearly established that when government officials affirmatively and with deliberate indifference place an individual in danger, those officials may be held liable" (citing *Kennedy*, 439 F.3d at 1066)).

---

[7] The Court has concluded that Cabelka fails to state a claim under § 1983 for violation of the Due Process Clause. Accordingly, the Court does not address whether the Social Worker Defendants are entitled to qualified immunity on Cabelka's Fourteenth Amendment claim.

In *Henry A.*, the court of appeals held that foster children stated a due process claim under the state-created danger doctrine by alleging that social workers knew of the danger of abuse and neglect that the children faced in certain foster homes and acted with deliberate indifference by exposing the foster children to that danger. 678 F.3d at 1003. In *Tamas*, the Court of Appeals held that a foster child stated a claim under the state-created danger doctrine because "[t]he state's approval of [the foster child's] foster care and adoption by [the foster parent] created a danger of molestation that [the foster child] would not have faced had the state adequately protected her as a result of the referrals." 630 F.3d at 844. *Henry A.* and *Tamas* are not "meaningfully distinguishable" from this case. *Kennedy*, 439 F.3d at 1066. In *Henry A.*, *Tamas*, and the present case, the social workers exposed the plaintiffs to a danger of sexual abuse they otherwise would not have faced. *See Paluk v. Savage*, 836 F.3d 1117, 1126 (9th Cir. 2016) (finding that another case was "factually similar" because in both cases, "the danger was a physical danger in the workplace"); *see also Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003) ("In order to find that the law was clearly established . . . we need not find a prior case with identical, or even 'materially similar,' facts. Our task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful." (internal citation omitted) (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002))). Based on the body of state-created danger caselaw, the Social Worker Defendants were on notice that placing and maintaining a foster child with a known history of sexually abusing his male foster siblings in a home with three young boys would violate the young boys' rights to due process. Based on the allegations at this stage in the proceedings, the Court concludes that the Social Worker Defendants are not entitled to qualified immunity for the alleged violations of the Minor Plaintiffs' substantive due process rights.

The Social Worker Defendants' Motion to Dismiss Plaintiffs' first cause of action under § 1983 for violation of Cabelka's federal rights under the Adoption Act is denied. The Social Worker Defendants' Motion to Dismiss Plaintiffs' first cause of action under § 1983 for violation of the Minor Plaintiffs' federal rights under the Adoption Act is granted.

The Social Worker Defendants' Motion to Dismiss Plaintiffs' first cause of action under § 1983 for violation of Cabelka's constitutional rights under the Fourteenth Amendment is granted. The Social Worker Defendants' Motion to Dismiss Plaintiffs' first cause of action under § 1983 for violation of the Minor Plaintiffs' constitutional rights under the Fourteenth Amendment is denied.

### d.  Section 1983 Claims Against the County

Plaintiffs allege pursuant to 42 U.S.C. § 1983 that the County violated Plaintiffs' rights under the Adoption Act[8] under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978).

The County contends that "the TAC does <u>not</u> actually identify any <u>formal</u> County policy that perpetuates or condones the violation of Plaintiffs' rights under the Adoption Act or the Fourteenth Amendment." (ECF No. 104-1 at 8). The County contends that Plaintiffs fail to allege facts to "support the existence of a <u>widespread practice</u> that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." (*Id.*). The County contends that Plaintiffs' individual experience with one foster child is insufficient to support an inference of an unlawful County custom. The County contends that Plaintiffs fail to allege non-conclusory factual allegations to support an inference that the County failed to train or discipline its employees.

Plaintiffs contend that they sufficiently "identified and enumerated several County policies, customs, and/or practices." (ECF No. 106 at 15). Plaintiffs contend that they adequately allege *Monell* liability under a practice or custom theory because multiple social workers engaged in unlawful behavior on multiple occasions. Plaintiffs contend that they properly allege *Monell* liability based on the County's failure to supervise and discipline its employees.

---

[8] Plaintiffs do not bring claims against the County for violations of the Fourteenth Amendment.

42 U.S.C. § 1983 does not provide for vicarious liability; local governments "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

As a prerequisite to establishing Section 1983 municipal liability, the plaintiff must satisfy one of three conditions:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and internal quotations omitted)).

> Absent a formal government policy, [the plaintiff] must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Gillette*, 979 F.2d at 1346-47. The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell* [ ], 436 U.S. [ ] at 691 [ ]. Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). *See also: Meehan v. Los Angeles Cty.*, 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy).

*Id.* A policy or custom may be inferred from "'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (quoting

*Gillette*, 979 F.2d at 1349). In "limited circumstances" the failure to train municipal employees can serve as the basis for *Monell* liability under § 1983. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). The plaintiff must show that the county had a training policy that "amounts to deliberate indifference" to the rights of the persons with whom the untrained employees are likely to come into contact with and that the injury would have been avoided if the county properly trained its employees. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)).

The Court has determined that the Minor Plaintiffs fail to allege violations of their rights under the Adoption Act. Accordingly, the County is not liable to the Minor Plaintiffs. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("Neither *Monell* . . . nor any of [the Supreme Court's] other cases authorize the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.").

The Court has determined that Cabelka has sufficiently alleged that the Social Worker Defendants violated her federal rights under the Adoption Act at this stage in the proceedings. Plaintiffs allege that the County had several policies, customs, or practices that caused the violations of Cabelka's federal rights, including "[n]ot requiring a social worker to disclose known histories, behavioral, medical, and/or psychiatric problems to a foster parent," "misrepresenting and/or concealing a foster child's history and needs in order to attain placement," and failing to investigate reports of sexual assaults or remove a foster child whose presence threatens other children in the home. (ECF No. 101 ¶¶ 148-49). Plaintiffs allege that the Social Worker Defendants' supervisors failed to "discipline, investigate, and/or report their subordinate social workers for failing to act pursuant to and/or in accordance with the County's policies, customs or practices in dealing with Plaintiffs." (*Id.* ¶ 151). Plaintiffs allege that the County "did not discipline any of the Individual Defendants for or in relation to their respective conduct, acts, and/or omissions." (*Id.* ¶ 152). Plaintiffs allege that the County failed to train its employees to avoid violating

the Adoption Act, including by failing to train social workers that they are "required to disclose current and relevant information to the care provider regarding the health, education, known or suspected dangerous behaviors, [and] psychiatric issues" of a foster child, and by failing to train social workers that they may not misrepresent or conceal a foster child's history and needs to obtain placement. (*Id.* ¶ 155).

The alleged violations of the Adoption Act occurred over multiple years, and Plaintiffs allege that multiple County employees lied and failed to provide information to Cabelka about D.G.'s history and background. "It is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim." *Gonzalez v. Cty. of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017). However, "where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Lemus v. Cty. of Merced*, No. 115-CV-00359-MCE-EPG, 2016 U.S. Dist. LEXIS 66294, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 F. App'x 859 (9th Cir. 2017). The Court can infer from Plaintiffs' allegations that the County had a policy or custom that caused the alleged violations of the Adoption Act. *See Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1193 (E.D. Cal. 2018) (holding that the plaintiff sufficiently alleged a municipal policy or custom where the plaintiff alleged that multiple employees failed to monitor his health or provide medical treatment of the course of two days). The Court concludes that Cabelka has stated a claim against the County under § 1983 at this stage in the proceedings for violations of her federal rights under the Adoption Act.

The County's Motion to Dismiss Plaintiffs' second cause of action under § 1983 for violations of the Minor Plaintiffs' federal rights under the Adoption Act is granted. The County's Motion to Dismiss Plaintiffs' second cause of action under § 1983 for violations of Cabelka's federal rights under the Adoption Act is denied.

///

///

///

# V.    MINOR PLAINTIFFS' STATE LAW CLAIMS

The Minor Plaintiff bring state law claims against Defendants for negligence, negligent and/or intentional misrepresentation, and intentional infliction of emotional distress.

### a. <u>Negligence</u>

Defendants assert that the Minor Plaintiffs fail to state claims for negligence. Defendants contend that the Minor Plaintiffs fail to identify a statute that imposes a mandatory duty on the County or its social workers. The Social Worker Defendants contend that the Child Abuse and Prevention Treatment Act ("CAPTA"), P.L. 93-247, did not impose a mandatory duty on the Social Worker Defendants to report the Minor Plaintiffs' sexual abuse allegations. The Social Worker Defendants contend that the Minor Plaintiffs fail to identify a provision of California's Child Abuse and Neglect Reporting Act ("CANRA"), Cal. Pen. Code §§ 11164-11174.3, that imposes a mandatory duty. The Social Worker Defendants contend that they did not have a duty to warn the Minor Plaintiffs because the Social Worker Defendants did not have a special relationship with the Minor Plaintiffs, and D.G. did not threaten any of the Minor Plaintiffs. Defendants further contend that they are immune from liability.

The Minor Plaintiffs contend that they "expressly identified" provisions of the California DSS Regulations, the California Welfare and Institutions Code, and the California Penal Code that "create obligatory duties that were breached" by the Social Worker Defendants. (ECF No. 105 at 20). The Minor Plaintiffs contend that the DSS Regulations require a social worker to disclose a foster child's background information to a foster parent. The Minor Plaintiffs contend that the Social Worker Defendants were required to report that D.G. sexually assaulted T.C. The Minor Plaintiffs contend that the County is liable for the Social Worker Defendants' negligence pursuant to sections 815.6 and 815.2 of the California Government Code. The Minor Plaintiffs contend that Defendants are not immune from liability.

///

**1.    Negligence Liability for Social Worker Defendants**

Section 820(a) of the California Government Code provides that, "[e]xcept as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." "[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Nally v. Grace Church*, 47 Cal. 3d 278, 293 (1988) (citing *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 594 (1970)). A duty may be "imposed by statute, contract or otherwise." *Id.* at 292.

The Minor Plaintiffs allege that "Defendants were obligated by constitutional provisions, statutes, and/or regulations" to "document, report and subsequently inform others, including Plaintiffs and/or Melanie Cabelka, about D.G.'s physical, medical, behavioral, and emotional condition . . . ." (ECF No. 101 ¶ 162). The Minor Plaintiffs allege that the "foster care requirements"

> mandate an affirmative duty by Defendants to refrain from undertaking conduct . . . that puts the Plaintiffs in danger they would not otherwise have faced . . . These duties included the duty to disclose certain information as described in detail above, to [Cabelka]. The requirements also include reporting claims of sexual abuse pursuant to [CAPTA and CANRA].

(*Id.* ¶ 165). The Minor Plaintiffs further allege that "Defendants owed a duty to warn and/or fully inform Plaintiffs of any matter that they 'knew or should have known' that might endanger the Plaintiff or his family" pursuant to *Johnson v. State of California*, 69 Cal. 2d 782, 785 (1968)). (*Id.* ¶ 169).

In *Johnson*, the State of California requested that the Johnson family accept the placement of a sixteen-year-old foster child. 69 Cal. 2d at 784. Mrs. Johnson, the foster mother, alleged that the state knew that the foster child had homicidal tendencies and a background of violence and cruelty to animals and humans, and the state failed to inform the Johnson family of the foster child's dangerous propensities. *Id.* at 784-85. The foster child assaulted his foster mother, and the foster mother sued the state for negligence. *Id.* at

785. The California Supreme Court held that, "[a]s the party placing the youth with Mrs. Johnson, the state's relationship to plaintiff was such that its duty extended to warning of latent, dangerous qualities suggested by the [foster child's] history or character." *Id.* at 785 (citing cases). The court determined that

> the state owed a duty to inform Mrs. Johnson of any matter that its agents knew or should have known that might endanger the Johnson family; at a minimum, these facts certainly would have included "homicidal tendencies, and a background of violence and cruelty" as well as the youth's criminal record.

*Id.* at 786.

The California Supreme Court examined the *Johnson* holding in *Thompson v. County of Alameda*. In *Thompson*, the county released a juvenile offender into the community, knowing that the offender had dangerous, sexual, and violent propensities toward young children. 27 Cal. 3d 741, 746 (1980). Prior to being released, the juvenile offender indicated to the county that he would kill a young child residing in his neighborhood. *Id.* The county released the juvenile offender into his mother's custody and did not warn anyone of the offender's threat or dangerous propensities. Within twenty-four hours of being released, the juvenile offender murdered a young boy who lived a few doors down from his mother. The court examined whether the county had a duty to warn local police, neighborhood parents, or the juvenile offender's mother of the offender's threat. *Id.* at 749. The court explained that the case law "impose[s] a duty upon those who create a *foreseeable peril*, not readily discoverable by endangered persons, to warn them of such potential peril." *Id.* at 751. The court explained that, unlike *Johnson* or *Tarasoff v. Regents of University of California*, 17 Cal. 3d 425 (1976)[9],

> plaintiffs here have alleged neither that a direct or continuing relationship

---

[9] In *Tarasoff*, the court held that a therapist had a duty to warn an "endangered party or those who can reasonably be expected to notify him" of a serious threat of violence to a foreseeable and identifiable victim. 17 Cal. 3d at 442, *superseded by statute*, Cal. Civ. Code § 43.92, *as stated in Regents of Univ. of Cal. v. Superior Court*, 29 Cal. App. 5th 890 (2018).

between them and County existed through which County placed plaintiffs' decedent in danger, nor that their decedent was a foreseeable or readily identifiable target of the juvenile offender's threats. Under such circumstances, while recognizing the continuing obligation of County, as with all public entities, to exercise reasonable care to protect *all* of its citizens, we decline to impose a blanket liability on County for failing to warn plaintiffs, the parents of other neighborhood children, the police or James' mother of James' threat.

*Id.* at 753.

In this case, the Minor Plaintiffs allege that the Social Worker Defendants were aware of D.G.'s history of sexual abuse, behavioral issues, and that he had been removed from his previous foster home for sexually assaulting a young boy. The Minor Plaintiffs allege that the Social Worker Defendants knew that Cabelka had three young male children and placed D.G. with the Cabelka family anyway. The Minor Plaintiffs allege that the Social Worker Defendants failed to warn Cabelka of the danger to the Minor Plaintiffs, and the Minor Plaintiffs were assaulted by D.G. as a result. The Court finds that the Minor Plaintiffs have alleged facts from which the Court can conclude a direct relationship existed between the Social Worker Defendants and the Cabelka family. The Court finds that the Minor Plaintiffs have sufficiently alleged facts at this stage in the proceedings to support a finding that the Social Worker Defendants had a duty to warn the Minor Plaintiffs' mother, Cabelka, of the foreseeable threat.[10]

### 2. Social Worker Defendants' Immunity for Negligence Claim

The Social Worker Defendants contend that they

are entitled to immunity for their discretionary and quasi-prosecutorial decisions to (1) place and supervise D.G. in the Cabelka home, (2) intervene or discontinue D.G.'s placement in the home, (3) warn Plaintiffs of D.G.'s

---

[10] The Social Worker Defendants do not challenge the Minor Plaintiffs' pleading of the other elements of a negligence claim. The Court does not address whether the Minor Plaintiffs have sufficiently pled a duty under any other statute, rule, or regulation because the Court has determined that the Minor Plaintiffs have sufficiently pled that the Social Worker Defendants had a duty under the *Johnson* standard to support a negligence claim at this stage in the proceedings.

behavioral issues and sexual abuse, and (4) investigate reports that D.G. sexually abused other children living in the home.

(ECF No. 103-1 at 26).

The Minor Plaintiffs contend that the Social Worker Defendants are not entitled to prosecutorial or discretionary immunity because the allegations do not establish that the Social Worker Defendants consciously balanced risks and benefits and made policy decisions. The Minor Plaintiffs contend that they have not alleged that the Social Worker Defendants were acting pursuant to their prosecutorial or quasi-prosecutorial functions.

### i. Discretionary Act Immunity

Under section 820.2 of the California Government Code, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." However, "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." *Barner v. Leeds*, 24 Cal. 4th 676, 684-85 (2000). "[G]overnment defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who 'consciously balanc[ed] risks and advantages[.]'" *AE ex. rel Hernandez v. Cty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012) (second alteration in original) (quoting *Johnson v. State of Cal.*, 69 Cal. 2d 782, 794 n. 8 (1968)). "The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." *Id.* (quoting *Johnson*, 69 Cal. 2d at 794 n. 8). Accordingly, "[i]t would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants." *Id.* at 640; *see Elton v. Cty. of Orange*, 3 Cal. App. 3d 1053, 1058 (1970) (explaining that the required showing of balancing the risks and advantages could not have been made by the county at the demurrer stage).

In this case, the Minor Plaintiffs' allegations do not demonstrate that the allegedly negligent acts were policy decisions made by government employees who consciously

balanced the risks and benefits of different alternatives. *See AE ex. rel Hernandez*, 666 F.3d at 640 (concluding that "the County was not entitled to a dismissal of AE's derivative liability claims on the basis of discretionary act immunity for the allegedly negligent placement and supervision of [a foster child] by [defendant government social workers]"); *Uriarte v. Bostic*, No. 15cv1606-MMA (PCL), 2017 U.S. Dist. LEXIS 81529, at *27-28 (S.D. Cal. May 26, 2017) ("[T]he Ninth Circuit has indicated that it may be inappropriate for courts to find discretionary act immunity applies at the pleadings stage."). The Court finds that the Social Worker Defendants have not established that they are entitled to immunity from the Minor Plaintiffs' negligence claim under section 820.2 of the California Government Code at this stage in the proceedings.

ii.  <u>Prosecutorial Function Immunity</u>

Under section 821.6 of the California Government Code, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment . . . ." The Court of Appeals for the Ninth Circuit has held that section 821.6 only provides immunity in suits for malicious prosecution. *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) (holding that *Sullivan v. County of Los Angeles*, 527 P.2d 865 (Cal. 1974), "confin[ed] [the] reach [of section 821.6] to malicious prosecution actions" and that "the California Supreme Court would adhere to *Sullivan* even though California Courts of Appeal have strayed from it"). The Minor Plaintiffs do not allege that the Social Worker Defendants engaged in malicious prosecution. The Social Worker Defendants are not entitled to immunity from the Minor Plaintiffs' negligence claim under section 821.6 of the California Government Code at this stage in the proceedings.

The Social Worker Defendants' Motion to Dismiss the Minor Plaintiffs' third cause of action for negligence is denied.

**3.  Negligence Liability for County**

Under section 815.2(a) of the California Government Code, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public

33

entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." The Court has determined that the Minor Plaintiffs have sufficiently pled a cause of action for negligence against the Social Worker Defendants at this stage in the proceedings. The Minor Plaintiffs allege that the Social Worker Defendants were acting within the course and scope of their employment when they failed to disclose D.G.'s dangerous propensities. Accordingly, the Minor Plaintiffs have sufficiently pled a negligence claim against the County at this stage in the proceedings pursuant to section 815.2(a).[11]

### 4.    County's Immunity for Negligence Claim

Section 815.2(b) of the California Government Code provides, "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." The Court has determined that the Social Worker Defendants have not shown that they are immune from liability for their alleged negligence at this stage in the proceedings. Therefore, the County is not immune from liability under section 815.2(b) at this stage in the proceedings.

The County's Motion to Dismiss the Minor Plaintiffs' third and fourth causes of action for negligence is denied.

///

---

[11] Because the Court has determined that the Minor Plaintiffs have sufficiently pled a negligence claim against the County under section 815.2(a) at this stage in the proceedings, the Court does not address whether the Minor Plaintiffs have sufficiently pled a negligence claim against the County under section 815.6, which provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity established that it exercised reasonable diligence to discharge the duty.

### b. <u>Negligent and/or Intentional Misrepresentation Claim</u>

Defendants assert that the Minor Plaintiffs fail to state claims for negligent or intentional misrepresentation. The Social Worker Defendants contend that they did not make any misrepresentations to the Minor Plaintiffs. The County contends that the Minor Plaintiffs "have not identified any statutory authority to hold the County of San Diego liable for the misrepresentation" claim. (ECF No. 104-1 at 15). The County contends that it cannot be liable under a theory of vicarious liability because the Minor Plaintiffs fail to allege sufficient misrepresentation claims against the Social Worker Defendants.

The Minor Plaintiffs contend that the Social Worker Defendants and the County are liable for negligent or intentional misrepresentation because the Minor Plaintiffs were "foreseeable victims when Defendants placed D.G., a sexual predator, in the Cabelka home and lied about D.G.'s prior history." (ECF No. 105 at 30).

The elements of fraud or intentional misrepresentation are "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 974 (1997) (quoting *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)); California Civil Jury Instructions ("CACI") No. 1900 (2017). The elements of a claim for negligent misrepresentation are "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th 182, 196 (2012).

In *Randi W. v. Muroc Joint Unified School District*, 14 Cal. 4th 1066 (1997), a minor plaintiff brought an action for claims including fraud and negligent misrepresentation against school districts and their employees. The plaintiff alleged that the defendants wrote letters recommending a vice principal for employment at her school without disclosing the vice principal's history of improper sexual conduct with female students. *Randi W.*, 14 Cal.

4th at 1071-72. The vice principal was hired at the plaintiff's school and sexually molested the plaintiff. *Id.* at 1070. The California Supreme Court concluded that

> defendants' letters of recommendation, containing unreserved and unconditional praise for former employee Gadams despite defendants' alleged knowledge of complaints or charges of his sexual misconduct with students, constituted misleading statements that could form the basis for tort liability for fraud or negligent misrepresentation. Although policy considerations dictate that ordinarily a recommending employer should not be held accountable to third persons for failing to disclose negative information regarding a former employee, nonetheless liability may be imposed if, as alleged here, the recommendation letter amounts to an *affirmative misrepresentation* presenting a foreseeable and substantial risk of physical harm to a prospective employer or third person.

*Id.*

In this case, the Minor Plaintiffs allege that the Social Worker Defendants affirmatively misrepresented D.G.'s history in the foster care system, D.G.'s violent propensities, and D.G.'s history of sexual abuse. The Minor Plaintiffs allege that after Cabelka complained about D.G.'s behaviors and suspected his history of sexual abuse, the Social Worker Defendants reassured Cabelka that all of D.G.'s behaviors were new. The Minor Plaintiffs allege that the Social Worker Defendants knew or should have known the representations were false. The Minor Plaintiffs allege that the Social Worker Defendants made the representations to induce Cabelka to accept and keep D.G. in her home. The Minor Plaintiffs allege that the Social Worker Defendants knew that Cabelka had three young sons. The Minor Plaintiffs allege that Cabelka relied on the Social Worker Defendants' representations in bringing and keeping D.G. in her home, and the Minor Plaintiffs were assaulted as a result. *See Dillard v. Victoria M. Morton Enters.*, No. 08-1339 FCD/GGH, 2008 U.S. Dist. LEXIS 79588, at *22-23 (E.D. Cal. Oct. 8, 2008) (relying on *Randi W.* to hold that two minor children stated a claim for misrepresentation where the minor children suffered flu-like symptoms after their mother relied on the defendants' representations about the safety of their products). The Court finds that the Minor Plaintiffs have alleged facts from which the Court can infer at this stage in the proceedings that the

Social Worker Defendants made an affirmative misrepresentation to Cabelka that presented a foreseeable and substantial risk of harm to her children, the Minor Plaintiffs.

The Minor Plaintiffs allege that the Social Worker Defendants were acting within the course and scope of their employment when they made misrepresentations to Cabelka. Therefore, the County may be liable to the Minor Plaintiffs. *See* Cal. Gov. Code § 815.2(a).

Defendants' Motions to Dismiss the Minor Plaintiffs' fifth cause of action for negligent and/or intentional misrepresentation is denied.

### c. <u>Intentional Infliction of Emotional Distress Claim</u>

Defendants assert that the Minor Plaintiffs fail to state claims for intentional infliction of emotional distress. The Social Worker Defendants contend that the Minor Plaintiffs fail to allege facts that show the Social Worker Defendants' behavior was outrageous. The Social Worker Defendants contend that they did not intentionally or recklessly cause harm to the Minor Plaintiffs. The Social Worker Defendants contend that T.C. does not allege facts that show that he suffered severe emotional distress. The County contends that it cannot be liable under a theory of vicarious liability because the Minor Plaintiffs fail to allege sufficient intentional infliction of emotional distress claims against the Social Worker Defendants.

The Minor Plaintiffs contend that the Social Worker Defendants' lies, omissions, threats, and coercion constitute outrageous behavior. The Minor Plaintiffs contend that the Social Worker Defendants knew the danger that D.G. posed to the Minor Plaintiffs and recklessly disregarded it. The Minor Plaintiffs contend that T.C. has sufficiently pled an emotional distress claim.

To establish a claim for intentional infliction of emotional distress, a plaintiff must show:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (quotation omitted). A defendant's conduct is "outrageous" when it is "so extreme as to exceed all abounds of that usually tolerated in a civilized community." *Id.* Outrageous behavior can occur where a defendant knows of a dangerous condition, fails to warn about the danger, and the plaintiff suffers physical harm as a result. *Wilson v. S. Cal. Edison Co.*, 234 Cal. App. 4th 123, 152 (2015); *see Bradley v. Dep't of Children & Family Servs.*, No. CV 17-6556-JFW (AGR), 2018 U.S. Dist LEXIS 226147, at *14 (C.D. Cal. Mar. 12, 2018) (holding that a foster child adequately pled claim for intentional infliction of emotional distress by alleging that after disclosing that he was sexually abused by his foster parent, social workers responded that the foster child "did not have a choice" but to return to the foster home, threatened to split him up from his brother if he refused to comply, failed to conduct an adequate investigation, attempted to cover up the allegations, and did not immediately seek a different foster home for the plaintiff or his brother), *vacated on other grounds*, 2018 U.S. Dist. LEXIS 226145 (C.D. Cal. Apr. 26, 2018).

In this case, the Minor Plaintiffs allege that the Social Worker Defendants misrepresented and concealed the facts that D.G. had known violent propensities, had been sexually abused, had witnessed the abuse of his siblings, and had been removed from his previous home because he sexually assaulted a young boy. The Minor Plaintiffs allege that the Social Worker Defendants told Cabelka not to go to the police and to allow D.G. to remain in her home after Cabelka reported his sexual attacks on the Minor Plaintiffs. The Minor Plaintiffs allege that T.C. was 13, D.C. was 12, and J.C. was six when they were sexually assaulted by D.G. The Minor Plaintiffs allege that D.C. was "traumatized by the rape." (ECF No. 101 ¶ 71). The Minor Plaintiffs allege that D.C. was unable to speak for hour after the rape, requires trauma therapy, experiences anxiety attacks at school, and "wears numerous layers of clothing to prevent anyone from touching him." (*Id.*). The Minor Plaintiffs allege that J.C. experienced "significant abrasions and injuries on his penis, and the surrounding area," after his sexual assault by D.G. (*Id.* ¶ 93). The Minor

Plaintiffs allege that J.C. cried for days after the assault, is terrified to sleep in his room, and requires the assistance of a therapist to cope with post-traumatic stress disorder. The Minor Plaintiffs allege that T.C. "watched, frozen in terror, as D.C. was violently sodomized by D.G." (*Id.* ¶ 202). The Minor Plaintiffs allege that they stayed home from school on multiple days because they were afraid of D.G. The Minor Plaintiffs allege that childhood sexual abuse causes "significant emotional trauma." (*Id.* ¶ 197).

The Minor Plaintiffs' factual allegations support an inference that the Social Worker Defendant's behavior was extreme and outrageous and that the Social Worker Defendants acted with a reckless disregard for the possibility that the Minor Plaintiffs would be sexually assaulted by D.G. *See Rozario v. Richards*, 687 F. App'x 568, 571 (9th Cir. 2017) (finding that the plaintiff alleged outrageous conduct where the defendant encouraged plaintiff to pet a dog and stated that the dog was sweet and cuddly (knowing that the dog was dangerous and had previously bitten another person) and discouraged the plaintiff from contacting paramedics after being attacked). The Minor Plaintiffs' factual allegations support an inference that each Minor Plaintiff suffered severe emotional distress. The Court concludes that the Minor Plaintiffs sufficiently state a claim against the Social Worker Defendants for intentional infliction of emotional distress at this stage in the proceedings.

The Minor Plaintiffs allege that the Social Worker Defendants were acting within the course and scope of their employment when they engaged in outrageous behavior. Therefore, the County may be liable. *See* Cal. Gov. Code § 815.2(a).

Defendants' Motions to Dismiss the Minor Plaintiffs' sixth cause of action for intentional infliction of emotional distress is denied.

## VI.   CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed filed by Defendants Sarah Wilson, Carlos Olmeda, Fatimah Abdullah, and Marilyn Sproat (ECF No. 103) is granted in part and denied in part. The Motion to Dismiss filed by Defendant County of San Diego (ECF No. 104) is granted in part and denied in part. No later than thirty days

from the date of this Order, Plaintiffs may file a motion for leave to amend pursuant to Civil Local Rules 7.1 and 15.1(c).

Dated: April 6, 2020

Hon. William Q. Hayes
United States District Court