UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.C.; J.C.; and T.C., by and through their Guardian, MELANIE CABELKA; and MELANIE CABELKA, individually,<br><br>                          Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SARAH WILSON; CARLOS OMEDA; FATIMAH ABDULLAH; and MARILYN SPROAT; and DOES 1 through 100, inclusive,<br><br>                          Defendants. | Case No.: 18-CV-13-SBC<br><br>**ORDER ON MOTION FOR GUIDANCE REGARDING THE DISTRIBUTION OF SETTLEMENT FUNDS, SUPPLEMENTAL FILING REGARDING DISTRIBUTION OF SETTLEMENT FUNDS, AND JOINT STIPULATION**<br><br>**[DOC. NOS. 177, 179, 204.]** |

### I.   INTRODUCTION

Before the Court are D.C.'s ("Plaintiff D.C." or "Plaintiff") October 28, 2022, Motion for Guidance Regarding the Distribution of Settlement Funds ("Motion") and December 12, 2022, Supplemental Filing Regarding Distribution of Settlement Funds ("Supplemental Filing") as well as the Parties' November 14, 2023, Joint Stipulation ("Joint Stipulation") (collectively, "Motions"). (Doc. Nos. 177, 179, 204.) As to Plaintiff D.C.'s Motion and Supplemental Filing, on December 13, 2022, the County of San Diego, Sarah Wilson, Carlos Omeda, Fatimah Abdullah, and Marilyn Sproat ("County

Defendants" or "Defendants") filed their Response to Plaintiff D.C.'s Motion and Supplemental Motion ("Opposition"). (Doc. No. 180.) The Parties' Joint Stipulation followed on November 14, 2023. (Doc. No. 204.) Having reviewed and considered the Parties' motion practice, the Joint Stipulation, and the entirety of the docket, inclusive of all party filings and orders as issued by formerly-presiding Magistrate Judge Nita L. Stormes, the Court DENIES Plaintiff D.C.'s Motions and the Parties' Joint Stipulation.

As discussed below, the Court concludes that it does not have jurisdiction to provide guidance or to adjudicate further issues on this case. Given the Joint Stipulation filed on November 14, 2023, it appears that the Parties have now resolved some of the issues raised by Plaintiff's October 28, 2022, Motion. Remaining mindful of these developments, the Court nevertheless rules upon Plaintiff's October 28, 2022, Motion and other requests as they have been presented, and finds that it lacks jurisdiction to provide the requested guidance.

## II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### a. Plaintiffs' Claims and the Parties' Initial Dispositive Motion Practice

This Action commenced on January 3, 2018. At the time, Plaintiffs D.C., T.C., and J.C. (collectively, "Minor Plaintiffs") were all minors and represented by their guardian *ad litem*, Melanie Cabelka ("Plaintiff Cabelka"). Minor Plaintiffs and Plaintiff Cabelka (collectively, "Plaintiffs") sued three entities, namely the County of San Diego, the County of San Diego Health and Human Services, and Casey Family Programs, and five individuals, Fatimah Abdullah, Laurel Bredthauer, Carlos Omeda, Marilyn Sproat, and Sarah Wilson. (*See generally* Doc. No. 1.) Plaintiffs brought five causes of action against Defendants, specifically (1) violation of Title 42 section 1983 ("Section 1983"); (2) *Monell* violations under Section 1983; (3) violation of California Government Code section 815.6; (4) negligence; and (5) negligent infliction of emotional distress. (*Id*.) Plaintiffs alleged Defendants failed to meet the standard of care when they placed a minor, D.J., into foster care with Plaintiff Cabelka and Minor Plaintiffs, and D.J. then sexually assaulted Plaintiff D.C. (*Id*. at ¶¶ 35-38.) The Action underwent three rounds of initial dispositive motion

practice under then-presiding District Judge William Q. Hayes. (*See* ECF Nos. 53, 100, 111.) Ultimately, the Action survived and proceeded on the October 3, 2019, Third Amended Complaint, where Plaintiffs maintained claims for Section 1983, *Monell*, and California Government Code section 815.6 violations, as well as negligent and/or intentional misrepresentation pursuant to California Government Code sections 815.2 and 815.6, and intentional infliction of emotional distress. (Doc. No. 101.)

Thereafter, on June 1, 2020, initially-presiding Magistrate Judge Michael S. Berg issued a Notice and Order for Early Neutral Evaluation Conference ("ENE"), setting an ENE for July 15, 2020. (ECF No. 113.) On June 17, 2020, the case transferred to then-presiding Magistrate Judge Daniel E. Butcher. (ECF. No. 116.) Judge Butcher convened the ENE as scheduled on July 15, 2020. (ECF No. 119.) The case did not settle at such time. (*See id*.) Consequently, Judge Butcher issued a same-day Scheduling Order Regulating Discovery and Other Pre-Trial Proceedings, and fact discovery commenced. (ECF No. 120.) On September 15, 2020, Plaintiffs filed the operative Fourth Amended Complaint ("FAC"), which added claims for assault and battery. (Doc. No. 140.)

### b. The Parties' Settlement and the Court's July 8, 2021, Hearing on Plaintiffs' Petition for Minors' Compromise

On September 16, 2020, Judge Butcher convened a Mandatory Settlement Conference ("MSC") in the case, which resulted in the Parties reaching settlement. (ECF No. 141.) The following day on September 17, 2020, then-presiding Magistrate Judge Stormes was assigned to handle the proceedings surrounding Plaintiffs' anticipated Petition for Minors' Compromise. (ECF No. 142.) On September 23, 2020, Judge Stormes issued an Order Setting Briefing Scheduling Regarding Minors' Compromise. (ECF No. 144.) The deadlines set forth therein were twice continued in response to Plaintiffs' January 15, 2021, and the Parties' March 25, 2021, continuance requests. (ECF Nos. 151, 154.) On April 22, 2021, Plaintiffs filed their Motion to Confirm Minors' Compromise. (Doc. No. 155.) On June 18, 2021, Judge Stormes set a July 8, 2021, hearing on Plaintiffs' Motion to Confirm Minors' Compromise. (ECF No. 163.)

The hearing proceeded as scheduled and resulted in Judge Stormes' tentative approval of Plaintiffs' proposed settlement terms. (ECF No. 164.) In relevant part, Judge Stormes opined that the "$438,197.90 [] earmarked for the minor D.C. and the special needs trust [] for him" was "fair and reasonable and in his best interest." (*Id*. at 7:21-23.) Judge Stormes added the only provision that was "lacking" in the proposed order for the special needs trust was "that the trust be approved by the probate court." (*Id*. at 7:24-8:1.) Accordingly, Judge Stormes approved the proposed trust with the addition of such provision and directed the Parties to file amended settlement documents and an accompanying proposed order. (*Id*. at 8:1-2; 14:25-15:3.)

### c. The Operative Settlement Agreement and Judge Stormes' September 28, 2021, Dismissal Order

On August 9, 2021, Plaintiffs filed the amended settlement documents as directed by Judge Stormes. (Doc. No. 170.) As noted, the settlement agreement underlying Plaintiffs' Petition for Minors Compromise called for the establishment of a special needs trust for Plaintiff D.C. (*See generally* Doc. No. 170-1.) Notably, Section One of Article One under Attachment A to the Parties' settlement agreement defined Plaintiff D.C. as an "individual with disabilities," citing to California Probate Code Sections 3600-3613/2580(b)(5) and 22 California Code of Regulations section 50489.9 and explaining "these laws provide that an irrevocable trust meeting certain requirements may be established for the benefit of an individual with a disability…" (*Id*.) In the same vein, Section Three of Attachment A to the settlement agreement referred to Plaintiff D.C. as "disabled" and defined his disabilities as Post-Traumatic Stress Disorder ("PTSD"), Reactive Attachment Disorder ("RAD"), Attention-Deficit Hyperactivity Disorder ("ADHD"), and Intermittent Explosive Disorder ("IED").  (*Id*. at 16.) Section Three of Article One continued that Plaintiff D.C. would "require ongoing care and supervision for the indefinite future," and Section Five qualified Plaintiff D.C.'s special needs trust as "irrevocable and not subject to amendment except on application of any interested party with the approval of a court of competent jurisdiction…" (*Id*.)

Section Five of Article Two defined the purpose of trust as "to provide for the special needs of the Beneficiary, a disabled adult" and added "the Beneficiary presently suffers from a disability that substantially impairs his ability to provide for his own care and custody and constitutes a substantial handicap." (*Id*. at 18.) Consistent with such understanding, Section Five noted the "trust is therefore intended to supplement, and not to supplant, the public benefits that would be available to the Beneficiary if this trust did not exist." (*Id*.) Further, Section One of Article Three directed "the Trustee [to] hold, administer, and distribute all property allocated to this trust and all income for the sole benefit of the Beneficiary during the Beneficiary's lifetime, unless this trust is earlier terminated." (*Id*.) Section One of Article Three also stated "Because the Beneficiary is disabled and unable to maintain and support himself independently, the Trustee shall, in the exercise of the Trustee's best judgment and fiduciary duty, administer this trust so as to encourage support and maintenance for the Beneficiary from all available public resources…" (*Id*. at 18-19.)

On August 29, 2021, Plaintiffs filed a Notice of Consent and Reference of a Civil Action, submitting to Judge Stormes' jurisdiction over the Action. (Doc. No. 171.) On September 9, 2021, Plaintiffs filed an Affidavit in Support of Plaintiffs' Motion to Confirm Minors' Compromise. (Doc. No. 172.) On September 20, 2021, Judge Stormes issued an Order granting Plaintiffs' Motion to Confirm Minors' Compromise. (ECF No. 174.) Specific to Plaintiff D.C., Judge Stormes found "the proposed award of $438,197.90 [wa]s appropriate." (*Id*. at 4:25-28.) Judge Stormes additionally "approve[d] the [special needs] trust as proposed, but impose[d] the additional requirement that the parties [] be required to petition the Superior Court to approve the special needs trust." (*Id*. at 5:1-4.)

In concluding, Judge Stormes reiterated "the funds dispersed to D.C. shall be through the special needs trust as proposed, and the parties will be required to petition the Superior Court to approve the trust." (*Id*. at 10:14-15.) Finally, Judge Stormes ordered "the parties shall implement the settlement in accordance with the terms of the Agreement" and file a Joint Motion to Dismiss the Action accordingly. (*Id*. at 10:18-19 [citing Doc. Nos.

169-170].) As a result, the Parties filed a Joint Motion to Dismiss Defendants with Prejudice Pursuant to FRCP 41(a) ("Joint Motion to Dismiss"). (Doc. No. 175.) On September 28, 2021, Judge Stormes issued an Order granting the Parties' Joint Motion to Dismiss, dismissed the case with prejudice, and directed the Clerk of the Court to close the case ("Dismissal Order"). (ECF No. 176.)

### d. Post-Dismissal Proceedings and Plaintiffs' October 28, 2022, Instant Motion

On October 28, 2022, one year following the Action's dismissal with prejudice, Plaintiffs filed the instant Motion for Guidance Regarding the Distribution of Settlement Funds. (Doc. No. 177.) Specifically, Plaintiff D.C. moves the Court to provide guidance on the disbursement of his settlement funds in light of the Probate Court purportedly losing jurisdiction over his petition for approval of the Parties' proposed special needs trust once Plaintiff D.C. turned 18 years old. (Doc. No. 177-2 at 4:5-7.) As discussed, pursuant to Judge Stormes' September 20, 2021, Order granting the Parties' Motion for Minors' Compromise, Plaintiff D.C.'s settlement funds were to be placed into a special needs trust upon the Probate Court's approval of the trust, with disbursement to follow thereafter and consistent with the Parties' settlement agreement. (Doc. No. 174, 10:8-17.) Plaintiffs' instant Motion explains that, on December 13, 2021, Plaintiffs' counsel filed a petition for approval of compromise in California Superior Court, which the California Superior Court dismissed and referred to the Probate Court. (Doc. No. 177-2 at 3:19-25 [citing the Declaration of Ayman Mourad "Mourad Decl.", ¶ 7, Exhibits ("Exhs." D, F].) More than half a year later, Plaintiffs' counsel filed the petition with the Probate Court on July 8, 2022, which the Probate Court rejected for non-compliance. (*Id*. at 3:26-27 [citing Mourad Decl., ¶ 9, Exh. G].) On August 15, 2022, Plaintiffs' counsel filed the petition once more with the Probate Court, but it was again rejected for non-compliance. (*Id*. at 3:27-28 [citing Mourad Decl., ¶ 10, Exh. H].) On August 18, 2022, Plaintiff D.C. turned 18 years old and thus reached the age of majority. (*Id*. at 4:1.)

///

Plaintiffs' Motion asks the Court to issue an order providing for the direct disbursement of Plaintiff D.C.'s settlement funds for two reasons, namely (1) the Probate Court has purportedly lost its jurisdiction over Plaintiffs' petition for approval of Plaintiff D.C.'s special needs trust and (2) the need for such trust has been mooted. Plaintiffs explain both grounds by the facts that (1) Plaintiff D.C. is no longer a minor and (2) no court has affirmatively held Plaintiff D.C. to be incompetent.[1] Plaintiff D.C. specifies that the "Probate Court does not have the statutory authority to approve his special needs trust" because he has reached the age of majority and "has not been deemed to be a person with a disability." (*Id*. at 4:21-23.) Defendants' December 13, 2022, Response to Plaintiffs' Motion ("Opposition") is dubious of Plaintiff D.C.'s representations of competence and purported right to a direct disbursement of funds. (Doc. No. 180 at 2:9-11.) Defendants opined "the trust did not dissolve when D.C. turned eighteen," based on defense counsel's review of the Parties' settlement terms. (*Id*. at 2:3-5.)

Judge Stormes responded to the Parties' instant motion practice on December 30, 2022, in her Order Regarding Plaintiff's Motion for Guidance Regarding Settlement. (Doc. No. 181.) Judge Stormes agreed with defense counsel's concerns, commenting "the Court finds Defendants' points well-taken. The special needs trust that was proposed to the Court by Plaintiffs was not simply based on D.C.'s minor status, but also his disability." (*Id*. at 2:11-13.) Accordingly, Judge Stormes issued an Order to Show Cause "as to whether D.C.'s best interests should still be served through a special needs trust or similar vehicle for disbursement based on his disability, rather than age." (*Id*. at 3:3-5.) Alternatively, Judge Stormes noted "if Plaintiffs now take the position that D.C. no longer requires continuing care for his ability, such showing needs to be made to the Court." (*Id*. at 3:8-

---

[1] Plaintiffs maintain these assertions but do not reconcile them with Judge Stormes' September 20, 2021, Order approving the Parties' settlement agreement, which expressly defined Plaintiff D.C. as an "individual with disabilities" and concurrently omitted any reference to Plaintiff D.C.'s status as a minor. (ECF No. 174.)

10.)

On February 3, 2023, Plaintiffs filed Briefing in Response to the Order to Show Cause Regarding Conservatorship, Guardianship, and a Special Needs Trust ("OSC Brief"). (Doc. No. 182.) Plaintiffs stated Plaintiff D.C. was not eligible for conservatorship or guardianship based on his current condition and reiterated his request for direct disbursement of funds to purchase a home and pay for college tuition. (*See id* at 5:18-19.) On February 17, 2023, Defendants filed their Response to Plaintiffs' OSC Brief, which emphasized their concerns regarding the veracity of Plaintiff D.C.'s disability claims, upon which the Parties premised their settlement agreement. (Doc. No. 184.) Specifically, Defendants called attention to Plaintiffs' scant "explanation for how D.C. recovered so significantly from his severe emotional disturbance in such a short period of time." (*Id*. at 2:6-8.) From there, Defendants stated "it would benefit all parties and this Court for Plaintiffs to provide evidence as to what care and treatment D.C. will need going forward, the estimated cost of [same], and whether any of the settlement funds will be used as previously agreed upon by the parties." (*Id*. at 2:23-26.)

On March 7, 2023, Judge Stormes held a status conference amongst Parties' counsel and issued same-day Order thereafter. (ECF. No. 187.) In doing so, Judge Stormes directed Plaintiffs to (1) file an unredacted copy of Dr. Judy Ho's report containing her evaluation of and treatment history concerning Plaintiff D.C.'s mental health as well as an affidavit from Plaintiff D.C.'s current therapist discussing the current status of his mental health and (2) address Plaintiff D.C.'s mental health care needs going forward, the cost of such healthcare, and whether any of the Parties' proposed settlement funds would pay for such healthcare. (*See id*.) On March 28, 2023, Plaintiffs filed their Report Regarding Order to Show Cause ("Report"). (Doc. No. 188.) Plaintiffs' Report represented that Plaintiff D.C.'s current therapist's office declined to produce the court-ordered reports on Plaintiff D.C. as part of its policy and practice and advised Plaintiff Cabelka to consult with a forensic psychiatrist. (*Id*. at 2:8-12.) From there, Plaintiffs moved the Court for an order requiring Defendant to provide payment for completion of Plaintiff D.C.'s forensic psychiatric

1  evaluation and the preparation of a report concerning the same. (*Id*. at 2:15-18.) The Court
2  granted Plaintiffs' request. In her March 29, 2023, Order, Judge Stormes directed the
3  Parties to agree upon a forensic psychiatrist, split the resulting costs, and file a joint status
4  report on April 12, 2023. (ECF. No. 191.)

5  On April 12, 2023, the Parties timely filed a Joint Status Report to the Court,
6  advising they selected Dr. James E. Stark to perform Plaintiff D.C.'s forensic psychiatric
7  evaluation and requesting an additional week to obtain Dr. Stark's cost estimate to
8  complete his evaluation. (Doc. No. 193.) Judge Stormes granted the Parties' continuance
9  request and ordered the Parties to file a second Joint Status Report on or before April 19,
10 2023. (ECF. No. 194.) On April 19, 2023, the Parties timely filed their second Joint Status
11 Report and requested an additional two weeks' time to contact other potential forensic
12 psychiatrists due to Dr. Stark's estimate exceeding the Parties' cost expectation. (Doc. No.
13 195.) On April 20, 2023, Judge Stormes granted the Parties' second continuance request
14 and ordered the Parties to agree upon a psychiatrist no later than May 5, 2023, or else
15 submit to Dr. Stark's evaluation. (ECF. No. 196.)

16 On May 5, 2023, the Parties filed their third Joint Status Report. (Doc. No. 197.) The
17 Parties updated the Court that they selected Dr. LeRoy Reese to serve as Plaintiff D.C.'s
18 forensic psychiatrist. (*Id*.) The Parties then requested a 30-day continuance to allow Dr.
19 Reese to complete his evaluation of and report on Plaintiff D.C. (*Id*.) On May 16, 2023,
20 Judge Stormes granted the Parties' request for extension and directed the Parties to file Dr.
21 Reese's report on or before June 23, 2023. (ECF. No. 198.)

22 On June 23, 2023, the Parties submitted their fourth Joint Status Report in lieu of
23 Dr. Reese's report for the Court's review. (Doc. No. 199.) The Parties reported that Dr.
24 Reese's office failed to timely provide defense counsel with certain tax documents the
25 County required in order to issue payment for Defendants' portion of Dr. Reese's retainer.
26 (*See id*.) The Parties advised that, upon receipt of Defendants' payment, Dr. Reese would
27 begin his evaluation of Plaintiff D.C. and a 60-day continuance would provide the Parties
28 sufficient time to file Dr. Reese's report with the Court. (*Id*.) On June 29, 2023, Judge

Stormes extended the Parties' deadline to file Dr. Reese's report to August 22, 2023, and cautioned that no further extensions would be granted absent extraordinary circumstances. (ECF. No. 200.)

On August 22, 2023, Defendants timely filed their portion of the Status Report. (Doc. No. 202.) Defendants explained the Parties' counsel met with Dr. Reese on July 17, 2023, to discuss the parameters of Plaintiff D.C.'s forensic psychiatric evaluation. (*Id*. at 2:4-9.) Defendants added that, during the meeting, Plaintiffs' counsel agreed to provide Plaintiff D.C.'s psychiatric records, including Dr. Judy Ho's report, to Dr. Reese to allow for a fulsome psychiatric evaluation. (*Id*.) According to Defendants, several weeks later, Plaintiffs' counsel informed Dr. Reese and defense counsel that Plaintiff D.C. refused to authorize the release of any of his medical records for Dr. Reese's review and evaluation, including Dr. Ho's report. (*Id*. at 2:10-14) For such reason, Defendants explained, Dr. Reese's forensic psychiatric evaluation of Plaintiff D.C. has stalled. (*Id*.) To that end, Defendants requested that Plaintiffs be directed to pay any additional fees to Dr. Reese beyond the $3,600.00 retainer the Parties agreed upon and to reimburse the County $1,800.00 should Plaintiff D.C.'s evaluation not move forward. (*Id*. at 2:26-3:1.) On August 22, 2023, Plaintiffs timely filed their respective Status Report. (Doc. No. 203.) Plaintiffs confirmed that Plaintiff D.C. "[wa]s unwilling to release his full previous records to Doctor Reese as part of the evaluation. Pending a discussion with Doctor Reese, Plaintiff may agree to disclose the report from Doctor Ho to Doctor Reese." (*Id*. at 2:7-10.)

Most recently, on November 15, 2023, the Parties filed a Joint Stipulation. (Doc. No. 204.) In relevant part, the Parties indicated that they reached resolution regarding their dispute over Plaintiff's outstanding forensic psychiatric evaluation. Specifically, the Joint Stipulation indicated "Plaintiff decided he would rather have the settlement funds placed in the original special needs trust than go through with the forensic evaluation." (*Id*. at 3:9-10.) The Joint Stipulation added that the "County of San Diego agree[d] to place the settlement funds in the original special needs trust, minus the $600 paid to the forensic psychologist that could not be reimbursed." (*Id*. at 3:18-20.) Defendants noted that they

"seek a Court order regarding whether the County can recoup $600 paid to the forensic psychologist from Plaintiff's settlement funds" while Plaintiff "asks that the reimbursable fees be split evenly between the Parties." (*Id.* at 3:26-28.) Notably, the Parties' Joint Stipulation is silent as to Plaintiffs' concern as articulated in their Motion for Guidance on Disbursement of Settlement Funds, namely the purported circumstance that the Probate Court has lost jurisdiction over Plaintiff D.C.'s petition for approval of the Parties' special needs trust. (Doc. No. 177-2 at 4:5-7.) Plaintiffs' underlying Motion and the Parties' Joint Stipulation are now ripe for the Court's consideration.

### III.   DISCUSSION

As a threshold matter, Plaintiffs do not cite to any Federal Rule of Civil Procedure to anchor their request for this Court's guidance on disbursement of settlement funds following Judge Stormes' entry of the September 28, 2021, Dismissal Order with prejudice. (Doc. No. 177; ECF No. 176.) Similarly, the Parties do not cite to any Federal Rule of Civil Procedure to support their most-recent requests regarding the apportionment of fees arising from their dispute concerning Plaintiff's forensic psychiatric evaluation. (*See generally* Doc. No. 204.) Notwithstanding the circumstance, the Court construes the Parties' collective requests as brought under Rule 60 of the Federal Rules of Civil Procedure, which may serve as a basis for relief from a judgment or order, inclusive of a dismissal order. Rule 60 consists of two sub-parts, both of which the Court applies to Plaintiffs' Motion and the Parties' Joint Stipulation. However, the Court first turns to the foundational question of whether it possesses jurisdiction over the Parties' settlement agreement, such that it may afford guidance or relief concerning disbursement of settlement funds or, alternatively, resolve the Parties' competing fee requests as stated in their Joint Stipulation. The Court finds that it does not possess jurisdiction over the Parties' settlement agreement and elaborates below.

/ / /

/ / /

/ / /

### a. Jurisdiction to Enforce the Terms of the Parties' Settlement Agreement

The Supreme Court's *Kokkenen* decision is instructive as to the bounds of this Court's jurisdiction over the Parties' settlement agreement following this Action's dismissal with prejudice. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute ...." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "Enforcement of [a] settlement agreement, ... whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.*, 511 U.S. at 378. Ancillary jurisdiction may not be invoked where "the only order ... was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement... The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." *Id.* at 380-81.

"The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* "Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382. Thus, to maintain jurisdiction to enforce the terms of a settlement agreement, the court must enter a dismissal order expressly retaining jurisdiction over settlement prior to an action's dismissal with prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. *See Whitaker v. AA Haroon LLC*, 2020 WL 7051343, at *2 (C.D. Cal. Sept. 8, 2020) (stating same and denying motion to enforce settlement agreement for lack of jurisdiction).

Here, the Court looks no further than Judge Stormes' September 28, 2021, Order Granting Joint Motion to Dismiss the Case with Prejudice to resolve the matter of the Court's jurisdiction over the Parties' settlement agreement. (ECF No. 176.) In its entirety,

Judge Stormes' Dismissal Order reads as follows: "Before the Court is the parties' Joint Motion to Dismiss the Case with Prejudice Pursuant to Federal Rule of Civil Procedure 41(a). ECF No. 175. For good cause shown, the Court GRANTS the joint motion to dismiss and dismisses the action in its entirety with prejudice. The Clerk is directed to close the case." (*Id.*) Notably, Judge Stormes' Dismissal Order did not incorporate any provision retaining jurisdiction for settlement purposes following the Action's dismissal with prejudice. The circumstance divests this Court of any authority to guide the Parties on the disbursement of settlement funds pursuant to Plaintiffs' Motion or resolve the Parties' fee requests pursuant to the Parties' Joint Stipulation. *See Uriarte-Limon v. Shinedling*, 2020 WL 6694336, at *2 (C.D. Cal. Aug. 13, 2020) (dismissing motion to enforce settlement agreement for lack of jurisdiction where "the parties did not request that the Court retain jurisdiction to enforce the settlement, did not include such language in any proposed order submitted to the Court, and the Court never agreed to retain jurisdiction to enforce the settlement agreement.") (citing *Kokkonen*, 511 U.S. at 380-81.); *Whitaker*, 2020 WL 7051343, at *2.

Further, the Court's independent survey of the docket shows neither party requested the Court's retention of jurisdiction for settlement purposes at any time, including prior to the case's closure and dismissal with prejudice. Coupled with the circumstance that Judge Stormes did not *sue sponte* retain jurisdiction over the Parties' settlement agreement, Plaintiffs' Motion and the Parties' Joint Stipulation now fall outside of the scope of this Court's authority. For this reason, the Court holds that it cannot offer guidance on the Parties' dispute over the disbursement of settlement funds pursuant to Plaintiffs' Motion or resolve the Parties' dispute over certain service fees pursuant to the Parties' Joint Stipulation. Accordingly, the Court DENIES Plaintiffs' Motion and the Parties' Joint Stipulation for lack of jurisdiction over the Parties' settlement agreement.

///

///

///

### b. Relief from Dismissal Order Pursuant to Rule 60(a)-(b)

Notwithstanding its lack of jurisdiction here, the Court considers Plaintiffs' Motion and the Parties' Joint Stipulation under Rule 60 in an effort to spare the matters from outright dismissal. Under Rule 60(a), a court "may correct a clerical mistake or mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Clerical errors include "blunders in execution" by the court, such as computational mistakes, errors in transcribing a judgment, specifying that a dismissal was without prejudice when that is what the court intended, or other similar circumstances. *McKeon v. Cent. Valley Cmty. Sports Found.*, 2021 WL 5450276, at *2 (E.D. Cal. Nov. 22, 2021) (citing *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297–98 (9th Cir. 2014).). Separately, under Rule 60(b), "on a motion and just terms, the court may relieve a party or its legal representative from a final judgment, or proceeding for any… reason that justifies relief." Fed. R. Civ. P. 60(b). However, movants must show "extraordinary circumstances" to justify relief under the Rule. *Keeling v. Sheet Metal Workers Int'l Ass'n, Loc. Union 162*, 937 F.2d 408, 410 (9th Cir. 1991). Ninth Circuit precedent affirms that "Rule 60(b)(6) relief normally will not be granted unless the moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993); *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007).).

Under both sub-parts of Rule 60, the Court finds no salvation for Plaintiffs' Motion or the Parties' Joint Stipulation. Under Rule 60(a), the Court finds no "blunder in execution" by Judge Stormes upon her entry of the Dismissal Order and the case's resulting closure. (ECF No. 176.) Judge Stormes' Dismissal Order responded directly to the Parties' September 28, 2021, Joint Motion to Dismiss, which read in its entirety as follows: "Pursuant to Rule 41(a)(1) of the Federal Rule of Civil Procedure, Plaintiffs MELANIE CABELKA, D.C., J.C. and T.C. (collectively "Plaintiffs"), and Defendants COUNTY OF SAN DIEGO, SARAH WILSON, CARLOS OLMEDA, FATIMAH ABDULLAH, and MARILYNN SPROAT ("Defendants") stipulate to dismiss this action as to all causes of

action against Defendants WITH PREJUDICE." (Doc. No. 175, 2:1-5.) Judge Stormes' Dismissal Order granted the precise relief the Parties sought, namely dismissal of the Action "as to all causes of action against Defendants with prejudice." (*Id.*) Because the Parties did not seek the Court's retention of jurisdiction for settlement purposes, Judge Stormes did not commit an oversight by excluding language retaining jurisdiction over settlement or otherwise "err[] in transcribing a judgment" upon issuing her Dismissal Order. *McKeon*, 2021 WL 5450276, at *2 (E.D. Cal. Nov. 22, 2021) (citing *Tattersalls, Ltd*, 745 F.3d at 1297–98.).

As for Rule 60(b), the Court finds Plaintiffs' Motion and the Parties' Joint Stipulation fail to establish the requisite "injury and [] circumstances beyond [their] control [that] prevented timely action to protect [their] interests." *Alpine Land & Reservoir Co.*, 984 F.2d at 1049; *Delay*, 475 F.3d at 1044.). Here, Plaintiffs' Motion makes clear there are no "extraordinary circumstances" justifying relief under Rule 60(b). Plaintiff D.C. presently lacks access to his settlement funds for want of a special needs trust that would have been in place consistent with the Parties' settlement agreement and Judge Stormes' September 20, 2021, Order granting Plaintiffs' Motion to Confirm Minors' Compromise but for his counsel's failure to timely file the proper petition in Probate Court. (ECF No. 174; *see also* Doc. No. 177-2, Mourad Decl., ¶¶6-10, Exhs. D-H.)

Moreover, even if this Court had jurisdiction over the Parties' settlement agreement, Plaintiffs' Motion demonstrates Plaintiff D.C. had obstructed his own access to his settlement funds by refusing to comply with the Parties' agreement on a neutral, forensic psychiatric evaluation and Judge Stormes' December 30, 2022, Order. (*See generally* ECF No. 181.) As to the Parties' latest filing, namely the November 14, 2023, Joint Stipulation, there are no representations indicating the presence of "extraordinary circumstances" under Rule 60(b). The Parties have reached agreement over the disbursement of the settlement funds and now dispute fees associated with their retention of a forensic psychologist – two circumstances which arise from Plaintiff D.C.'s initial refusal to comply with the terms of the Parties' settlement agreement.

For these collective reasons, the Court finds Plaintiff D.C. as well as the Parties collectively have not shown any circumstance beyond their control that prevented their timely action to protect their respective interests. *Alpine Land & Reservoir Co.*, 984 F.2d at 1049; *see also Whitaker*, 2020 WL 7051343, at *3 (C.D. Cal. Sept. 8, 2020) (finding plaintiff did not establish "extraordinary circumstances" under Rule 60(b) for defendants' purported failure to tender payment pursuant to the parties' settlement agreement and denying relief from the court's dismissal with prejudice); *Sunnergren v. Cate*, 2015 WL 6667478, at *2 (N.D. Cal. Nov. 2, 2015) ("To justify relief under Rule 60(b)(6), the repudiation must amount to a complete frustration of the settlement agreement and not merely a single breach or disagreements over proper interpretation") (citing *Hermetic Order of Golden Dawn, Inc. v. Griffin*, 400 Fed. App'x. 166, 167 (9th Cir. 2010).). Accordingly, the Court DENIES Plaintiffs' Motion and the Parties' Joint Stipulation pursuant to Rule 60(a)-(b).

## IV. CONCLUSION

For the foregoing reasons, the Court finds it lacks jurisdiction over Plaintiffs' Motion for Guidance on Disbursement of Settlement Funds, Plaintiffs' Supplemental Filing, and the Parties' Joint Stipulation. (Doc. Nos. 177, 179, 204.) The Court's lack of jurisdiction divests the Court of any authority to offer guidance regarding disbursement of settlement funds or to adjudicate the Parties' fee requests as stated in their Joint Stipulation. Accordingly, the DENIES Plaintiffs' Motion and DENIES the Parties' Joint Stipulation for lack of jurisdiction. The case shall remain closed pursuant to Judge Stormes' September 28, 2021, Dismissal Order. (ECF No. 176.)

**IT IS SO ORDERED.**

Dated: December 5, 2023

Hon. Steve B. Chu
United States Magistrate Judge